### STATE OF NORTH CAROLINA v. JAMES JOHNSON.

(Filed 2 June, 1965.)

**Assault and Battery § 14—**

> Evidence that defendant's wife, after separation, came to the home, armed with a box of lye, to get some personal belongings, that an altercation ensued, that defendant had an open knife in his hand and that when he came toward her she told him to let her out, whereupon defendant immediately unlocked the door, and that the wife then threw the lye upon him and he ran out the door and left, without any evidence that he menaced or threatened her with the knife, or that he intended or did restrain her, *is held* insufficient to be submitted to the jury in a prosecution for assault.

CERTIORARI for review of the trial of a criminal action before *Mintz, J.,* and a jury, November 1964 Session of EDGECOMBE.

Defendant is charged with an assault on a female, his wife, he being a male person over the age of 18 years. From a conviction and prison sentence in the Recorder's Court of Rocky Mount, defendant appealed to the Superior Court of Edgecombe County.

Plea: Not guilty. Verdict: Guilty. Judgment: Active prison sentence.

*Attorney General Bruton, Deputy Attorney General Moody, and Assistant Attorney General Sanders for the State.*

*Frank R. Brown for defendant.*

PER CURIAM. Defendant contends the court erred in overruling his motion for nonsuit.

The State's evidence tends to show: Defendant and his wife, Ella Johnson, had separated. On 16 January 1964 Ella went to their former home to get some personal belongings. She knocked on the door and defendant let her in; he took a skeleton key from his pocket and locked the door behind her. Everything she picked up to take with her "he would make" her put down. He had a knife in his hand and it was open. He came toward her with the knife and she told him to let her out. "When he went to open the door," she threw lye on him; she had brought the lye in her pocketbook. Some of it got on his coat. He ran

out the door and left; she went home. Defendant "took out a warrant" for her, and after she was arrested she "took out a warrant for him."

Ella made these explanations: "He did not do anything to me while I was inside the house. . . . if I had taken anything I don't know whether he was planning to cut me or what. . . . I had asked him to let me out before I threw the lye; he was on the way to the door. . . . It was my clothes I was picking up that he made me put back down . . . I picked up some bed linens, they were mine. I took some sheets and things . . . I bought them and they were mine. He told me to put them down, that I was not going to get anything. . . . He did not say what he was going to do with the knife. I did not ask him what he was planning to do with it. He has never cut me before but he has stuck a knife in me; I do not mean he had stabbed me before but he had stuck a knife in me a little bit. . . . It was not enough to hurt much but I know he was not playing. I had the box of lye with me when I came to the house because I was afraid of James" (defendant).

Defendant made these uncontradicted explanations: "The knife I had was a little knife that you mostly see on a key ring with car keys, a little knife with a chain on the end. I was cleaning my fingernails with it. . . . the knob on the door that you generally open the door with had been broken, so in order for the door to stay closed you had to lock it with a skeleton key."

Defendant had been convicted on at least one prior occasion of assault on his wife.

"In order to constitute a criminal assault there must be an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a man of reasonable firmness in fear of immediate bodily harm." 1 Strong: N. C. Index, Assault and Battery, § 4, p. 182 (Supp., p. 60).

When these elements essential to constitute the offense are considered, it is clear that the conduct of defendant on the occasion in question does not amount to a criminal assault. Prosecutrix stated that she was afraid of defendant. This was because of his conduct on prior occasions, not because of anything that transpired on this occasion. She went to his home, reinforced by the box of lye which she had concealed in her pocketbook; thus she had put matters on an equal footing. She testified: "I considered the box of lye protection to keep him from hurting me. I could keep him off of me by throwing it on him." She stated that when she picked up things "he would make" her put them down. She explained that he "told" her to put them down. There is no evidence that he threatened her or offered any violence. He started toward her with the knife; there is no evidence that the knife was drawn or that

he menaced her with it. At this point she asked him to open the door and he immediately complied. As he was opening the door she threw lye on him. He ran outside and left the premises. There is nothing to indicate that by locking the door he intended to imprison her or that he did restrain her. There is nothing to show she was "in fear of immediate bodily harm."

The judgment below is

Reversed.