STATE OF NORTH CAROLINA v. STEVEN CLARENCE LEAZER

No. 175PA00

(Filed 21 December 2000)

**Homicide— first-degree murder—evidence of premeditation and deliberation—instruction on second-degree murder not given**

The Court of Appeals erred in a first-degree murder case by holding that the trial court should have instructed on the lesser-included offense of second-degree murder where there was evidence of malice in that defendant, an inmate, punched another inmate in the chest with an eight-and-a-half inch shank; the evidence did not demonstrate provocation by the decedent and there was no evidence of an argument between the two; there was evidence that defendant anticipated a confrontation in that he entered the recreation area carrying a shank and waited until the guard turned away before striking; and defendant inflicted three stab wounds on the victim, with over ten seconds between the first and the fatal blows. No matter what defendant's intent may have been before he inflicted the first wound, there was adequate time between each blow for defendant to have premeditated his actions. The case was remanded to the Court of Appeals with instructions to address the remaining assignments of error.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, 137 N.C. App. 385, 533 S.E.2d 307 (2000), holding that the trial court erred by not instructing on the lesser-included offense of second-degree murder, thus vacating the judgment entered 9 January 1997 by Bullock, J., in Superior Court, Wake County, and ordering a new trial. Heard in the Supreme Court 17 October 2000.

*Michael F. Easley, Attorney General, by Ronald M. Marquette, Special Deputy Attorney General, for the State-appellant.*

*Nora Henry Hargrove for defendant-appellee.*

MARTIN, Justice.

On 21 May 1996 Steven Clarence Leazer (defendant) was indicted for the murder of Bobby Ray Holloman (Holloman). Defendant was

tried capitally at the 2 December 1996 Criminal Session of Superior Court, Wake County. The jury found defendant guilty of first-degree murder on the basis of malice, premeditation, and deliberation. Following a capital sentencing proceeding, the jury recommended a sentence of life imprisonment without parole, and the trial court entered judgment in accordance with that recommendation.

On appeal to the Court of Appeals, defendant argued the state had presented insufficient evidence to sustain his conviction for murder on the basis of premeditation and deliberation. Defendant also alleged the trial court erred by failing to instruct on second-degree murder.

In an unpublished opinion, the Court of Appeals concluded the evidence was sufficient to convince a reasonable jury that defendant had committed first-degree murder. Nonetheless, the Court of Appeals held the trial court should have instructed the jury on second-degree murder because the evidence gave rise to "conflicting inferences" concerning premeditation and deliberation. On 15 June 2000 we allowed the state's petition for discretionary review.

At trial, the state presented evidence that on 3 April 1996 defendant and Holloman were housed in the same cell block at Central Prison in Raleigh, North Carolina. The cell block housed sixteen inmates on two levels. Defendant was housed in cell 101, and Holloman was assigned next door in cell 102. Their cells were located on the extreme right-hand side of the lower level, as seen from an entranceway known as a "sally port." The sally port consisted of two electronically controlled doors enclosing a three-foot section of hallway. When one door opened, the other would not open until the first door closed completely. The process of opening and closing the sally port doors took at least ten to fifteen seconds.

The cells bordered one side of a central recreation area. The recreation area consisted of a raised floor furnished with tables and chairs. Two steps connected the lower level cells to the recreation area. Only four inmates were allowed into the recreation area at a time. On the other side, opposite the cells, were the sally port entranceway and a control booth. The control booth was enclosed in Plexiglas, allowing the guard inside to view the entire cell block area.

On 3 April 1996 defendant, Holloman, and two other inmates were in the recreation area. Defendant and Holloman sat at a table in

the recreation area. They appeared to be having a normal conversation. Defendant faced the control booth, which was manned by Officer Hopkins. Holloman sat with his back to the booth.

During the recreation period Officer Hopkins briefly turned from watching the inmates. He walked to the side of the control booth to reach switches necessary to let a nurse pass through a nearby hallway. As he did so, he noticed an unusual arm movement reflected in the Plexiglas. He stepped back and saw defendant standing between two tables. Holloman was not visible.

Officer Hopkins tapped on the Plexiglas and motioned to three officers in an adjoining section of the cell block. The officers immediately went to the sally port entranceway. While they waited for the sally port doors to open and shut behind them, they saw defendant and Holloman standing a few feet apart in the corridor between their two cells. Defendant faced the officers with a pointed object protruding from his right fist. Holloman faced defendant with his hands in the air.

As the final sally port door opened to allow the officers into the cell block, Holloman turned his head and looked towards them. At that moment, defendant threw a punch with his right hand that hit Holloman in the upper chest. Holloman turned towards the officers, mounted the stairs to the recreation floor, and collapsed. The officers ordered defendant to drop his weapon. Defendant moved as if to throw something down. Officers later found a shank, a type of homemade weapon, on the floor of Holloman's cell. The shank was eight and a half inches of thick metal, sharpened into the form of an ice pick.

An autopsy showed Holloman suffered three stab wounds. The wounds were located on the back of his right shoulder, on the left side of his back, and on his upper chest. The blow to his chest punctured both his heart and aorta, causing a fatal hemorrhage.

Later in the day, while defendant was in a holding cell, he told an officer, "he guessed the stabbing had been turned into a killing, into a murder and they would probably seek the death penalty but that [sic] wouldn't get it." Defendant and Holloman had no known history of ill will between them.

Defendant did not present evidence during the guilt-innocence phase of trial.

STATE v. LEAZER

[353 N.C. 234 (2000)]

This Court allowed the state's petition for discretionary review to examine whether the Court of Appeals erred in concluding that defendant was entitled to an instruction on second-degree murder.

Defendant is "entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847 (1973). This rule enhances the reliability of the fact-finding process and provides a "necessary additional measure of protection for the [capital] defendant." *Beck v. Alabama*, 447 U.S. 625, 645, 65 L. Ed. 2d 392, 407 (1980). However, "due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction. The jury's discretion is thus channelled so that it may convict a defendant of any crime fairly supported by the evidence." *Hopper v. Evans*, 456 U.S. 605, 611, 72 L. Ed. 2d 367, 373 (1982); *see also State v. Smith*, 351 N.C. 251, 267, 524 S.E.2d 28, 40, *cert. denied*, —— U.S. ——, 148 L. Ed. 2d 100 (2000). "Where no lesser included offense exists, a lesser included offense instruction detracts from, rather than enhances, the rationality of the process." *Spaziano v. Florida*, 468 U.S. 447, 455, 82 L. Ed. 2d 340, 349 (1984); *see also State v. Lampkins*, 286 N.C. 497, 504, 212 S.E.2d 106, 110 (1975), *cert. denied*, 428 U.S. 909, 49 L. Ed. 2d 1216 (1976).

"First-degree murder is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation." *State v. Thomas*, 350 N.C. 315, 346, 514 S.E.2d 486, 505, *cert. denied*, —— U.S. ——, 145 L. Ed. 2d 388 (1999). "Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation." *State v. Flowers*, 347 N.C. 1, 29, 489 S.E.2d 391, 407 (1997), *cert. denied*, 522 U.S. 1135, 140 L. Ed. 2d 150 (1998). Second-degree murder is a lesser included offense of first-degree murder. *State v. Larry*, 345 N.C. 497, 517, 481 S.E.2d 907, 918, *cert. denied*, 522 U.S. 917, 139 L. Ed. 2d 234 (1997). "If the [s]tate's evidence establishes each and every element of first-degree murder and there is no evidence to negate these elements, it is proper for the trial court to exclude second-degree murder from the jury's consideration." *Flowers*, 347 N.C. at 29, 489 S.E.2d at 407; *see also State v. Strickland*, 307 N.C. 274, 293, 298 S.E.2d 645, 658 (1983), *overruled on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986).

In the present case, the evidence presented by the state is positive and uncontradicted as to each element of first-degree murder. First, "[m]alice is presumed where the defendant intentionally assaults another with a deadly weapon, thereby causing the other's death." *State v. McNeill*, 346 N.C. 233, 238, 485 S.E.2d 284, 287 (1997), *cert. denied*, 522 U.S. 1053, 139 L. Ed. 2d 647 (1998). At trial, the state introduced positive evidence of malice by showing that defendant punched Holloman in the chest with an eight-and-a-half-inch shank made of thick, sharpened metal. The blow punctured Holloman's heart and aorta, causing his death.

The evidence is similarly positive and uncontradicted as to premeditation and deliberation. "Premeditation means that the act was thought over beforehand for some length of time," however short. *State v. Trull*, 349 N.C. 428, 448, 509 S.E.2d 178, 191 (1998), *cert. denied*, —— U.S. ——, 145 L. Ed. 2d 80 (1999). "Deliberation means an intent to kill, carried out in a cool state of blood, . . . and not under the influence of a violent passion" or a sufficient legal provocation. *Thomas*, 350 N.C. at 347, 514 S.E.2d at 506. "Premeditation and deliberation are ordinarily not susceptible to proof by direct evidence and therefore must usually be proven by circumstantial evidence." *State v. Alston*, 341 N.C. 198, 245, 461 S.E.2d 687, 713 (1995), *cert. denied*, 516 U.S. 1148, 134 L. Ed. 2d 100 (1996). Premeditation and deliberation can be inferred from many circumstances, some of which include:

> "(1) absence of provocation on the part of deceased, (2) the statements and conduct of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill will or previous difficulties between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds."

*State v. Sierra*, 335 N.C. 753, 758, 440 S.E.2d 791, 794 (1994) (quoting *State v. Olson*, 330 N.C. 557, 565, 411 S.E.2d 592, 596 (1992)).

The evidence presented at trial failed to demonstrate provocation on the part of decedent. When Officer Hopkins turned to let the nurse through the hallway, defendant and Holloman were talking at a table in the recreation room. Holloman was unarmed. There was no evidence of any argument between the two. *See State v. Rose*, 339 N.C. 172, 195, 451 S.E.2d 211, 224 (1994) (where one victim was seated

when he was shot, "there was no evidence—only conjecture—supporting defendant's theory that he shot the victims spontaneously during an altercation"), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995); *cf. State v. Love*, 296 N.C. 194, 204, 250 S.E.2d 220, 227 (1978) (evidence that defendant pulled up beside victim and without provocation shot into the car at least two times before driving away was sufficient to show that defendant had "formed a fixed purpose to kill the deceased and thereafter accomplished that purpose").

Defendant entered the recreation area carrying a shank, knowing he would be joined by only three other inmates. Further, he waited until the guard had turned away before striking. This was evidence "that he had anticipated a possible confrontation . . . and that he had given some forethought to how he would resolve that confrontation." *State v. Ginyard*, 334 N.C. 155, 159, 431 S.E.2d 11, 13 (1993).

The nature and number of the victim's wounds is another indicator of premeditation and deliberation. "[T]he premise of the 'felled victim' theory of premeditation and deliberation is that when numerous wounds are inflicted, the defendant has the opportunity to premeditate and deliberate from one [blow] to the next." *State v. Austin*, 320 N.C. 276, 295, 357 S.E.2d 641, 653, *cert. denied*, 484 U.S. 916, 98 L. Ed. 2d 224 (1987). In *Austin*, the defendant shot three people with a semiautomatic rifle "capable of firing up to fifteen rounds within seconds." *Id.* There, we noted that "[e]ven though the rifle is capable of being fired rapidly, some amount of time, however brief, for thought and deliberation must elapse between each pull of the trigger." *Id; see also Larry*, 345 N.C. at 514, 481 S.E.2d at 917.

In the present case, defendant inflicted three stab wounds on Holloman. Over ten seconds passed between the time defendant first stabbed Holloman in the back, Officer Hopkins called the guards, the sally port doors opened to let them in to the recreation area, and defendant inflicted the fatal blow. No matter what defendant's intent may have been before he inflicted the first wound, there was adequate time between each blow for defendant to have premeditated and deliberated his actions. *See Ginyard*, 334 N.C. at 159, 431 S.E.2d at 13 (substantial evidence to show premeditation and deliberation; defendant stabbed victim four times); *State v. Zuniga*, 320 N.C. 233, 259, 357 S.E.2d 898, 915 (evidence sufficient to show premeditation and deliberation; defendant stabbed victim in neck, partially removed the knife, then stabbed again), *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987); *State v. Fisher*, 318 N.C. 512, 518, 350 S.E.2d 334,

338 (1986) (premeditation and deliberation found; defendant stabbed victim multiple times).

The Court of Appeals determined the evidence supported an instruction on second-degree murder because "conflicting inferences" could be drawn concerning premeditation and deliberation. We disagree. Because there was positive, uncontradicted evidence of each element of first-degree murder, an instruction on second-degree murder was not required. *See State v. Cintron*, 351 N.C. 39, 519 S.E.2d 523 (1999) (per curiam), *cert. denied*, —— U.S. ——, 146 L. Ed. 2d 498 (2000). "A defendant is not entitled to an instruction on a lesser included offense merely because the jury could possibly believe some of the [s]tate's evidence but not all of it." *State v. Annadale*, 329 N.C. 557, 568, 406 S.E.2d 837, 844 (1991). Further, "mere speculation [as to the rationales for defendant's behavior] is not sufficient to negate evidence of premeditation and deliberation." *State v. Gary*, 348 N.C. 510, 524, 501 S.E.2d 57, 67 (1998).

When viewed as a whole, the evidence in this case did not support the submission of second-degree murder to the jury. The state presented positive and uncontradicted evidence of each element of first-degree murder. Accordingly, we reverse the decision of the Court of Appeals. This case is remanded to that court with instructions to address defendant's remaining assignments of error.

REVERSED.