STATE OF NORTH CAROLINA v. JAMES RUSSELL COGDELL

No. COA03-605

(Filed 20 July 2004)

**1. Sentencing— superseding habitual felon indictment—different underlying felonies—notice**

The trial court did not err by failing to dismiss the superseding habitual felon indictment that contained substantive changes to all three of the previous underlying felonies after defendant entered his pleas at the arraignment, because: (1) a plea entered at an arraignment is, in essence, a preliminary plea since it is not entered in every instance; (2) the critical event that forecloses substantive changes in an habitual felon indictment is the plea entered before the actual trial; and (3) defendant received sufficient notice that he was being prosecuted as an habitual felon when the three months' notice he received far exceeded the prohibition against trying a defendant as an habitual felon within the twenty day time period provided under N.C.G.S. §14-7.3.

**2. Burglary and Unlawful Breaking or Entering— felony breaking or entering—intent—motion to dismiss—sufficiency of evidence**

The trial court did not err by failing to dismiss the charge of felony breaking or entering based on alleged insufficient evidence that defendant intended to commit a felony, i.e. larceny, in the pertinent office building because: (1) the evidence viewed in the light most favorable to the State revealed that the security system keypad to the office was destroyed, the contents of an employee's desk had been removed and strewn around, the

STATE v. COGDELL

[165 N.C. App. 368 (2004)]

keypad to the motion detector system from the office was destroyed, and a computer monitor and processor were missing; (2) the fact of the entry alone in the nighttime accompanied by flight when discovered is some evidence of guilt, and in the absence of any other proof or evidence of other intent, may warrant a reasonable inference of guilty intent to commit a larceny after a break-in; and (3) although a statement regarding defendant's attempt to locate a friend's house was offered as an explanatory fact, that fact does not explain defendant's need to damage the office and its security systems.

**3. Prisons and Prisoners— malicious conduct by a prisoner— misdemeanor assault on a government official**

The trial court did not err by failing to instruct on misdemeanor assault on a government official as a lesser-included offense of malicious conduct by a prisoner, because: (1) assuming arguendo that misdemeanor assault on a governmental official is a lesser-included offense of malicious conduct by a prisoner, defendant failed to make the factual showing required to support a jury instruction on that offense; and (2) defendant concedes the only essential element of malicious conduct by a prisoner not also an element of misdemeanor assault on a government official is the element that defendant was in custody at the time he acted, and the State's evidence at trial established that defendant was in police custody when he spat at an officer.

Judge LEVINSON concurring in a separate opinion.

Appeal by defendant from judgment entered 16 December 2002 by Judge Ernest B. Fullwood in New Hanover County Superior Court. Heard in the Court of Appeals 25 February 2004.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Elizabeth F. Parsons, for the State.*

*Winifred H. Dillon for defendant-appellant.*

HUNTER, Judge.

James Russell Cogdell ("defendant") appeals a judgment sentencing him to 120 to 153 months imprisonment for felonious breaking and entering, damage to real property, malicious conduct by a prisoner, as well as attaining the status of an habitual felon. Specifically, defendant takes issue with the trial court's failure to (I) dismiss a

superseding habitual felon indictment filed after he pled to the substantive felonies, (II) dismiss the charge of felony breaking and entering due to insufficient evidence, and (III) instruct on a lesser included offense of malicious conduct by a prisoner. For the reasons stated herein, we conclude the trial court did not err.

At the outset, we note that this opinion was originally filed by this Court on 4 May 2004. However, the Court was unaware of a pending motion for appropriate relief that had been properly filed by defendant on 24 November 2003 while the matter was pending in this Court. Once that motion was brought to this Court's attention, the opinion was withdrawn by order dated 12 May 2004. As a result of the North Carolina Supreme Court's holding in *State v. Jones*, 358 N.C. 473, 598 S.E.2d 125 (2004), defendant's motion for appropriate relief is denied and we now re-file this opinion without further modification.

On 14 January 2002, defendant was indicted for breaking and entering, felony larceny, possession of stolen goods, injury to real property, and malicious conduct by a prisoner. On 22 January 2002, defendant was also indicted as an habitual felon. Defendant was arraigned on these indictments on 29 May 2002. The State subsequently obtained a superseding habitual felon indictment on 3 September 2002, changing all three underlying felony convictions on which it had previously relied to support defendant's habitual felon status. Defendant was arraigned on that indictment on 6 September 2002. Defendant's trial began on 9 December 2002, at which the following evidence was offered.

The State's evidence tended to show that Officer Thomas Witkowski ("Officer Witkowski") and Officer Matt Fox ("Officer Fox") of the Wilmington Police Department responded to a call in the early morning hours of 7 December 2001 about a break-in at the office of the Wilmington Housing Authority ("WHA office"), located in the basement of the James Walker Apartments building ("Walker Building"). During his search of the outside of the Walker Building for signs of a break-in, Officer Fox heard a banging noise coming from the basement and informed Officer Witkowski. While Officer Fox remained at the front of the Walker Building, Officer Witkowski located a door to the WHA office in the basement area of the building. Although the door was locked, Officer Witkowski was able to discern a person inside the office through a small window in the door. Officer Witkowski saw a black man wearing a plaid shirt hitting a

STATE v. COGDELL

[165 N.C. App. 368 (2004)]

door inside the office with what appeared to be a fire extinguisher. He radioed Officer Fox with that information.

As Officer Fox went around the side of the Walker Building, he thought he heard the exit door on the back side of the building slam. Officer Fox then saw a black male wearing a plaid shirt, later identified as defendant, approximately six feet from the door walking away from the building. Officer Fox called to defendant to stop, but when it appeared that defendant was about to run, Officer Fox grabbed defendant and handcuffed him. Officer Witkowski rejoined Officer Fox and identified defendant as the man he saw inside the WHA office. Both officers smelled alcohol on defendant and testified that he appeared intoxicated. Further, while defendant was in Officer Fox's custody, he was unruly and verbally abusive, and defendant spat at the officer.

Thereafter, an inspection of the WHA office revealed a broken window on the basement level, which Officer Witkowski believed was the means of entry into the office. Also, the WHA office was in disarray, the keypads to the security system and motion detector system were destroyed, the contents of an employee's desk had been removed and strewn around, a computer monitor and processor were missing, the fire extinguisher was on the floor, and one of the doors in the office had red marks on it as if from the fire extinguisher. The technician that processed the crime scene was unable to obtain any usable or identifiable fingerprints.

Defendant's evidence tended to show that, on 6 December 2001, he had been drinking and had taken several Xanax tablets. That night, he had continued drinking at a friend's house located across the street from the Walker Building. Defendant did not recall breaking into the WHA office or his subsequent arrest. Nevertheless, on rebuttal, Officer Dean Allen testified that while in the back of his patrol car, defendant "said that he was inside of the [Walker] building . . . trying to find a friend's house."

I.

[1] Defendant first assigns error to the trial court's failure to dismiss the superseding habitual felon indictment. The original indictment listed the following three previous felonies: (1) defendant committed the felony of common law robbery on 21 July 1988 and was convicted of the felony of larceny from the person on 29 November 1988; (2) defendant committed the felony of breaking and/or entering and lar-

**STATE v. COGDELL**

[165 N.C. App. 368 (2004)]

ceny on 9 October 1993 and was convicted of the felony of breaking and/or entering on 9 February 1994; and (3) defendant committed the felony of breaking and/or entering and larceny on 4 April 1995 and was convicted of the felony of possession of stolen goods on 29 June 1995. However, after defendant entered his pleas during the arraignment on the substantive felony indictments, a superseding habitual felon indictment was filed listing the following three previous felonies: (1) defendant committed the felony of larceny from the person on 21 July 1998 and was convicted on that felony on 29 November 1998; (2) defendant committed the felony of possession of stolen goods on 4 April 1995 and was convicted of that felony on 29 June 1995; and (3) defendant committed the felony of possession of cocaine on 30 December 1999 and was convicted of that felony on 3 October 2000. Defendant contends that the trial court erred in allowing the State to file a superseding indictment that contained substantive changes to all three of the previous underlying felonies after he had entered his pleas at the arraignment.

In support of this assigned error, defendant analogizes his case to *State v. Little*, 126 N.C. App. 262, 484 S.E.2d 835 (1997). In *Little*, the State filed several habitual felon indictments before the defendant ("Little") pled to the substantive felonies. However, after obtaining convictions on those substantive felonies at trial, the State filed a superseding habitual felon indictment, deleting one of the felonies listed in a prior habitual felon indictment and replacing it with another. Thereafter, Little pled guilty to one habitual felon charge, but reserved the right to appeal that issue. On appeal, the Court concluded that substituting one of the underlying felony convictions for another in the superseding indictment resulted in

> a substantive change in the indictment as it alters the allegations supporting an element of the offense. . . . Furthermore the defendant is entitled to rely, at the time he enters his plea on the substantive felony, on the allegations contained in the habitual felon indictment in place at that time in evaluating the State's likelihood of success on the habitual felon indictment. Therefore because the defendant did not have notice, prior to his plea on the substantive felonies, that the State was seeking to have him declared an habitual felon on the basis of the three felonies listed in the [superseding] indictment, the trial court erred in adjudicating and sentencing the defendant as an habitual felon . . . based on that indictment.

*Id.* at 269-70, 484 S.E.2d at 840. The habitual felon plea was vacated and the case remanded for a new sentencing.

In the instant case, defendant argues that as held in *Little*, the State should not be allowed to obtain a superseding habitual felon indictment containing different underlying felonies on which it was previously relying because defendant had already entered pleas to the substantive felony indictments at his arraignment. While we certainly recognize the obvious similarity between the two cases being that both involve superseding indictments that contain substantive changes, we conclude that *Little* and the present case are nonetheless distinguishable.

First, unlike the present case, the superseding indictment in *Little* was filed *after* that defendant was convicted of the substantive felonies. Second, there was absolutely no indication that the pleas on the substantive felonies discussed in *Little* actually occurred at an arraignment. Defendant would have us believe that a defendant's plea entered at an arraignment is the critical event that forecloses substantive changes in an habitual felon indictment. However, we have found no statutory authority or case law specifically supporting that contention.

The purpose of an arraignment is to advise the defendant of the charges pending against him and direct him to plead. N.C. Gen. Stat. § 15A-941(a) (2003). "If the defendant fails to plead, the court must record that fact, and the defendant must be tried as if he had pleaded not guilty." *Id.* Although defendant here entered a plea at the arraignment on the substantive felonies, that plea was not necessary. In fact, "[w]here there is no doubt that a defendant is fully aware of the charge against him, or is in no way prejudiced by the omission of a formal arraignment, it is not reversible error for the trial court to fail to conduct a formal arraignment proceeding." *State v. Smith*, 300 N.C. 71, 73, 265 S.E.2d 164, 166 (1980).

It is therefore our conclusion that a plea entered at an arraignment is, in essence, a preliminary plea because it is not entered in every instance. Thus, the critical event that forecloses substantive changes in an habitual felon indictment is the plea entered before the actual trial. Our Supreme Court tends to support this conclusion by holding that an habitual felon adjudication in North Carolina is the functional equivalent of the following:

"Before the trial and in the absence of the jury, both parts of the indictment are read to the defendant, at which time he

must plead to the charge of the present crime. If he pleads not guilty to the present offense and proceeds to trial, at the trial there can be no mention to the jury of the prior convictions. If and when the jury returns a verdict of guilty, the second part of the indictment is again read to the defendant, at which time he must plead to the recidivist allegation. If he admits the prior convictions, he is sentenced in accordance with the recidivist statute. If he denies them, he is entitled to a jury trial on the issue of prior convictions."

*State v. Allen*, 292 N.C. 431, 434, 233 S.E.2d 585, 587-88 (1977) (citation omitted).

Finally, assuming *arguendo* that a plea entered at an arraignment is intended to foreclose substantive changes to an habitual felon indictment, the most important distinction between this case and *Little* involves notice. In *Little*, this Court determined that the trial court erred because "the defendant did not have *notice*, prior to his plea on the substantive felonies, that the State was seeking to have him declared an habitual felon on the basis of the three felonies listed in the [superseding] indictment . . . ." *Little*, 126 N.C. App. at 270, 484 S.E.2d at 840 (emphasis added).

One basic purpose behind our Habitual Felons Act is to provide notice to defendant that he is being prosecuted for some substantive felony *as a recidivist*. Failure to provide such notice where the state accepts a guilty plea on the substantive felony charge may well vitiate the plea itself as not being knowingly entered with full understanding of the consequences.

*Allen*, 292 N.C. at 436, 233 S.E.2d at 588. Although the superseding habitual felon indictment was filed after defendant's first arraignment, it was filed approximately three months before defendant's trial. N.C. Gen. Stat. § 14-7.3 (2003) provides that "[n]o defendant charged with being an habitual felon in a bill of indictment shall be required to go to trial on said charge within 20 days of the finding of a true bill by the grand jury . . . ." Three months far exceeds the prohibition against trying a defendant as an habitual felon within this twenty day time period. Thus, defendant received sufficient notice that he was being prosecuted as an habitual felon.

II.

**[2]** Next, defendant argues the trial court erred in declining to dismiss the charge of felony breaking and entering. We disagree.

In order to survive a motion to dismiss in a criminal action, the trial court must view the evidence in the light most favorable to the State, drawing every reasonable inference in favor of the State. *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). If a reasonable inference of the defendant's guilt may be deduced from the evidence, then the court must deny the motion to dismiss and submit the case to the jury even though the evidence may also support inferences of innocence. *State v. Alexander*, 337 N.C. 182, 187, 446 S.E.2d 83, 86 (1994). The evidence considered by the court must be "substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982).

Here, defendant argues the felony breaking and entering charge should have been dismissed because there was insufficient evidence that he intended to commit a felony (i.e. larceny) in the Walker Building, which is one of the essential elements of felonious breaking and entering. *See* N.C. Gen. Stat. § 14-54(a) (2003). However, when the evidence is viewed the light most favorable to the State, it tends to show that (1) the security system keypad to the WHA office was destroyed, (2) the contents of an employee's desk had been removed and strewn around, (3) the keypad to the motion detector system for the office was destroyed, and (4) a computer monitor and processor were missing. Moreover, this Court has held that " '[t]he fact of the entry alone, in the night time, accompanied by flight when discovered, is some evidence of guilt, and in the absence of any other proof, or evidence of other intent, and with no explanatory facts or circumstances, may warrant a reasonable inference of guilty intent[]' " to commit a larceny after a break-in. *State v. Humphries*, 82 N.C. App. 749, 751, 348 S.E.2d 167, 169 (1986) (citation omitted). Although a statement regarding defendant's attempt to locate a friend's house was offered as an explanatory fact, that "fact" does not explain defendant's need to damage the office and its security systems. Therefore, defendant's assignment of error is without merit.

III.

[3] Defendant also argues the trial court erred in declining to instruct on a lesser included offense of malicious conduct by a prisoner, i.e. misdemeanor assault on a government official. Assuming *arguendo* that misdemeanor assault on a government official is a lesser included offense of malicious conduct by a prisoner, defendant has

failed to make the factual showing required to support a jury instruction on that offense.

Our Supreme Court has held:

The test in every case involving the propriety of an instruction on a lesser grade of an offense is not whether the jury could convict defendant of the lesser crime, but whether the State's evidence is positive as to each element of the crime charged and *whether there is any conflicting evidence relating to any of these elements.*

*State v. Leroux*, 326 N.C. 368, 378, 390 S.E.2d 314, 322 (1990) (emphasis added). In the case *sub judice*, defendant concedes "[t]he only essential element of malicious conduct by a prisoner not also an element of misdemeanor assault on a government official is the element that the Defendant was in custody at the time he acted." The State's evidence at trial clearly established that defendant was in police custody when he spat at Officer Fox, and defendant neither argued nor offered evidence to the contrary. Since there was no conflicting evidence, the trial court did not err in declining to instruct the jury on misdemeanor assault on a government official.

Accordingly, the trial court did not err in failing to dismiss the superseding habitual felon indictment, dismiss the charge of felony breaking and entering, or instruct on a lesser included offense of malicious conduct by a prisoner.

No error.

Judge McCULLOUGH concurs.

Judge LEVINSON concurs in a separate opinion.

LEVINSON, Judge, concurring with separate opinion.

I concur in the majority opinion but write separately to express the reasons misdemeanor assault on a government official is not a lesser included offense of malicious conduct by a prisoner.

A defendant "is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *State v. Leazer*, 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000) (citation and internal quotation marks omitted). "North Carolina has adopted a

definitional test for determining whether a crime is in fact a lesser offense that merges with the greater offense." *State v. Kemmerlin*, 356 N.C. 446, 475, 573 S.E.2d 870, 890 (2002) (citation omitted). "All of the essential elements of the lesser crime must also be essential elements included in the greater crime. If the lesser crime has an essential element which is not completely covered by the greater crime, it is not a lesser included offense." *Id.* (citation and quotation marks omitted).

Assault on a government official is defined by N.C.G.S. § 14-33(c)(4) (2003) as follows:

[A]ny person who commits any assault, assault and battery, or affray is guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or affray, he or she . . . [a]ssaults an officer or employee of the State or any political subdivision of the State, when the officer or employee is discharging or attempting to discharge his official duties[.]

Thus, the essential elements of the crime are: (1) an assault (2) on a government official in the actual or attempted discharge of his duties. "There is no statutory definition of assault in North Carolina, and the crime of assault is governed by common law rules." *State v. Mitchell*, 358 N.C. 63, 69, 592 S.E.2d 543, 547 (2004) (citation and quotation marks omitted). Our Supreme Court has defined assault as "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." *Id.* at 69-70; 592 S.E.2d at 547 (citation and quotation marks omitted).

Malicious conduct by a prisoner is defined in N.C.G.S. § 14-258.4 (2003) as follows:

Any person in the custody of the Department of Correction, the Department of Juvenile Justice and Delinquency Prevention, any law enforcement officer, or any local confinement facility . . . , including persons pending trial, appellate review, or presentence diagnostic evaluation, who knowingly and willfully throws, emits, or causes to be used as a projectile, bodily fluids or excrement at a person who is an employee of the State or a local government while the employee is in the performance of the employee's duties is guilty of a Class F felony.

Thus, the essential elements of this offense are: (1) a person in "custody", (2) who knowingly and willfully, (3) throws, emits, or causes to be used as a projectile, (4) bodily fluids or excrement, (5) at a government employee in the performance of his duties.

Careful analysis of these different offenses reveals that they contain different elements. Malicious conduct by a prisoner includes numerous elements that are not part of assault on a government employee, to wit: custody of a person, a "knowing and willful" *mens rea* standard, and the use of bodily fluid or excrement directed "at" a government employee. Misdemeanor assault on a government official includes at least one element that malicious conduct by a prisoner does not: the actions of the perpetrator must be such as to place a person of reasonable firmness in imminent fear of bodily injury. *Compare State v. Johnson*, 264 N.C. 598, 599-600, 142 S.E.2d 151, 153 (1965) (discussing reasonable fear element of assault), *with* G.S. § 14-258.4 (including no such element).[1] As these crimes each contain different elements, one cannot be a lesser included offense of the other. *Kemmerlin*, 356 N.C. at 475, 573 S.E.2d at 890.

The divergence between these two offenses is underscored by the fact that a defendant can be guilty of malicious conduct by a prisoner without committing misdemeanor assault on a government official. For example, a prisoner could throw bodily fluids or excrement "at" a prison guard under circumstances where no reasonable person in the guard's position would fear that the contaminant would actually touch him, either because the prisoner is restrained and clearly unable to throw the substance with sufficient force to reach the guard, or because the guard was not in a position to observe the conduct. In this situation, the inmate may be guilty of malicious conduct by a prisoner **without** being guilty of misdemeanor assault on a government official. This is so because G.S. § 14-258.4 requires only that a bodily fluid or excrement be thrown "at" a government official, whereas G.S. § 14-33(c)(4) requires that the official either be touched by the instrument of assault or reasonably fear such a touching. Thus, a conviction for malicious conduct by a prisoner might be sustained without regard to whether the government employee had fear of a touching, while a conviction for assault on a government official would require such fear or an actual touching.

---

1. Moreover, assault on a government official may be committed when the officer is "attempting" to discharge his official duties, G.S. § 14-33(c)(4), while malicious conduct by prisoner can be sustained only when the employee is "in the performance" of his duties, G.S. § 14-258.4. This suggests another essential element in G.S. § 14-33(c)(4) that is not completely covered by G.S. § 14-258.4.

Such an outcome is entirely logical, as the legislature apparently intended to address separate evils with these different offenses. Assault on a government official criminalizes attacks against police officers and/or other government officials who are in the actual or attempted performance of their duties. Quite differently, malicious conduct by a prisoner proscribes a specific type of conduct that may or may not constitute an "assault": throwing or emitting bodily fluids or excrement "at" a law enforcement officer and/or other government employee.

Accordingly, defendant was not entitled to have assault on a government official submitted to the jury because neither the evidence nor the law would support such an alternative verdict.