STATE OF NORTH CAROLINA v. ANNA DANIELLE CROUSE

No. COA04-804

(Filed 5 April 2005)

**1. Prisons and Prisoners— malicious conduct by prisoner— failure to instruct on misdemeanor assault on law enforcement officer as lesser-included offense**

The trial court did not err by denying defendant's request to submit misdemeanor assault on a law enforcement officer as a lesser-included offense of malicious conduct by a prisoner, because: (1) misdemeanor assault on a law enforcement officer is not a lesser-included offense of malicious conduct by a prisoner; (2) although an assault may be included in the commission of malicious conduct by a prisoner, it need not be; and (3) the legis-

STATE v. CROUSE

[169 N.C. App. 382 (2005)]

lature intended to address a different problem with each offense when assaults on government officials have been criminalized to punish and prevent attacks against government officials trying to perform public duties whereas the criminalization of malicious conduct by a prisoner is directed at deterring and punishing the projecting of bodily fluids or excrement at governmental employees by those in custody whether or not such conduct amounts to an assault.

**2. Prisons and Prisoners— malicious conduct by prisoner— motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of malicious conduct by a prisoner arising from defendant spitting on an officer even though defendant contends there was insufficient evidence that she acted knowingly and willfully, because: (1) there was evidence tending to show that defendant demonstrated control of her motor skills when she ran from the police earlier in the evening, that she expressed dissatisfaction with the officers grabbing her hands, and that she drew her breath, puckered her mouth, collected saliva, and then spit on an officer; and (2) although there was also evidence that defendant was in a stupor, there was ample evidence to support the knowing and willful element from which the jury could resolve this factual issue.

**3. Evidence— officer testimony—precautions taken when arrestee's saliva comes into contact with officer**

The trial court did not commit prejudicial error by overruling defendant's objection to and motion to strike an officer's testimony concerning the precautions normally taken when an arrestee's saliva comes into contact with an officer's eyes or mouth or an open wound.

Appeal by defendant from judgment entered 25 February 2004 by Judge Henry E. Frye, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 14 February 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Elizabeth F. Parsons, for the State.*

*Morgan Herring Morgan Green Rosenblutt & Gill, L.L.P., by J. Scott Coalter, for defendant appellant.*

McCULLOUGH, Judge.

Defendant (Anna Danielle Crouse) appeals from conviction and judgment for malicious conduct by a prisoner. We hold that she received a fair trial, free of prejudicial error.

On 8 April 2003 Officer Sprinkle with the High Point Police Department was dispatched to a home on South Road in High Point, North Carolina to "check[] on the welfare of the defendant." Shortly after arriving Officer Sprinkle and some other officers were able to get defendant to exit the dwelling. According to one of the officers, defendant "had a dazed look, [an] almost . . . not completely coherent type of look" when she was first approached. Shortly after exiting the dwelling, defendant began running down South Street away from the officers. According to Officer Sprinkle, defendant "appear[ed] to have control of her motor skills" and "was running in a normal fashion."

The officers did not pursue defendant immediately, and instead checked to see if defendant had any outstanding warrants. Upon learning that there was an outstanding warrant for defendant's arrest, the officers quickly located defendant and attempted to place her under arrest. According to Officer Sprinkle, defendant was "irate . . . about the fact that she was under arrest," and she "refused to put her hands behind her back after she was told to do so, and just struggled to keep from getting her hands behind her back." After approximately thirty seconds of struggling with defendant, the officers were successful in placing her in handcuffs and moving her towards a patrol vehicle.

Defendant was transported to the High Point Police Department and then placed in a holding cell while Officers Catherine Farabee and K. D. Riesen did some paperwork. Defendant was still in handcuffs with her arms behind her back when she was placed in the holding cell. Upon making routine checks of the holding cell, Officers Farabee and Riesen twice noticed defendant lying on the floor in a fetal position under the bench attached to the cell's wall. Each time, the officers required defendant to return to a seated position on the bench. Upon being confronted a second time, defendant resisted the officers' efforts to return her to a seated position. According to Officer Farabee, defendant "wasn't recognizing being spoken to at all" and began "cussing and kicking at" the officers when they attempted to move her onto the bench. During the struggle, defendant ended up in a position from which she could reach for Officer

Farabee's belt on the side that held the officer's gun. Officer Farabee reacted by twisting the handcuffs which were restraining defendant to prevent her from reaching the belt. At this point, defendant spat in Officer Farabee's face. When her face was forced into a corner to prevent her from spitting on the officers again, defendant yelled "let go of my f——in' hands."

Officer Riesen witnessed defendant spit on Officer Farabee, which he described as follows:

> Officer Farabee had [defendant] where her head was kind of towards the wall . . . [,] and I observed [defendant] turn her head back towards Officer Farabee. She took what looked like a deep breath, like you would if you were getting ready to, I don't know, cough, but it was like you could see the chest really rise, and you could see her mouth start to pull like she was making a spit, and she puckered up, like, whooh, and then the next thing I know, before I could even have a chance to tell Officer Farabee to watch out, she had spit.

Defendant's spittle hit Officer Farabee in the face, but fortunately did not go into her eyes or mouth.

Defendant was indicted for, and convicted of, malicious conduct by a prisoner, and the trial court imposed a mitigated sentence of fifteen to eighteen months' imprisonment. Defendant now appeals.

---

**[1]** In her first argument on appeal, defendant contends that the trial court erred in denying her request to submit misdemeanor assault on a law enforcement officer as a lesser included offense of malicious conduct by a prisoner. We do not agree.

The issue of whether assault on a law enforcement officer is a lesser included offense of malicious conduct by a prisoner has been argued previously in this Court. *See State v. Cogdell*, 165 N.C. App. 368, 599 S.E.2d 570, *disc. review denied*, 359 N.C. 71, 604 S.E.2d 918 (2004); *State v. Smith*, 163 N.C. App. 771, 594 S.E.2d 430 (2004). In *Cogdell*, we resolved the issue by concluding that, even "[a]ssuming *arguendo* that misdemeanor assault on a government official is a lesser included offense of malicious conduct by a prisoner, defendant has failed to make the factual showing required to support a jury instruction on that offense." *Cogdell*, 165 N.C. App. at 375-76, 599 S.E.2d at 574; *see also Smith*, 163 N.C. App. at 774, 594 S.E.2d at 432 (finding no error in the trial court's refusal to submit assault on

a government official to the jury where "the State presented evidence as to each essential element of the offense of malicious conduct by a prisoner and defendant presented no evidence to negate the State's evidence.").

Thus, our holdings on this issue have been narrow; we have merely determined that the issue need not be reached where the defendant fails to make the requisite factual showing. *Cogdell*, 165 N.C. App. at 376, 599 S.E.2d at 574. However, a concurring opinion was filed in *Cogdell* that addressed, and rejected, defendant's lesser included offense argument. *Id.* at 376, 599 S.E.2d at 575 (Levinson, J., concurring). With the issue now squarely before us, we hold that misdemeanor assault on a government official is not a lesser included offense of felony malicious conduct by a prisoner.

A defendant " 'is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.' " *State v. Leazer*, 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000) (citation omitted). "North Carolina has adopted a definitional test for determining whether a crime is in fact a lesser offense that merges with the greater offense." *State v. Kemmerlin*, 356 N.C. 446, 475, 573 S.E.2d 870, 890 (2002). " '[A]ll of the essential elements of the lesser crime must also be essential elements included in the greater crime. If the lesser crime has an essential element which is not completely covered by the greater crime, it is not a lesser included offense.' " *Id.* (citation omitted).

The statutory offense of felony malicious conduct by a prisoner is codified as follows:

> Any person in the custody of the Department of Correction, the Department of Juvenile Justice and Delinquency Prevention, any law enforcement officer, or any local confinement facility . . . , including persons pending trial, appellate review, or presentence diagnostic evaluation, who knowingly and willfully throws, emits, or causes to be used as a projectile, bodily fluids or excrement at a person who is an employee of the State or a local government while the employee is in the performance of the employee's duties is guilty of a Class F felony.

N.C. Gen. Stat. § 14-258.4 (2003). Accordingly, to convict a defendant of this offense, the State must allege and prove: (1) that a person in custody (2) knowingly and willfully (3) threw, emitted, or caused to

be used as a projectile, bodily fluids or excrement (4) at a government employee (5) in the performance of his duties. *Id.*; *State v. Robertson*, 161 N.C. App. 288, 292-93, 587 S.E.2d 902, 905 (2003).

The statutory offense of misdemeanor assault on a government official is codified as follows:

[A]ny person who commits any assault, assault and battery, or affray is guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or affray, he or she . . . assaults an officer or employee of the State or any political subdivision of the State, when the officer or employee is discharging or attempting to discharge his official duties[.]

N.C. Gen. Stat. § 14-33(c)(4) (2003). To convict a defendant of this offense, the State must allege and prove: (1) an assault (2) on a government official (3) in the actual or attempted discharge of his duties. *Id.* " 'There is no statutory definition of assault in North Carolina, and the crime of assault is governed by common law rules.' " *State v. Mitchell*, 358 N.C. 63, 69, 592 S.E.2d 543, 547 (2004) (citation omitted). The common law defines an assault as " ' "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." ' " *Id.* at 69-70, 592 S.E.2d at 547 (citations omitted).

Malicious conduct by a prisoner includes elements that are excluded from assault on a government official. Specifically, malicious conduct by a prisoner requires that the perpetrator be in "custody," that the crime be committed knowingly and willfully, that the crime involve the use of bodily fluid or excrement, and that such material be directed "at" a government employee.

Likewise, assault on a government official includes at least one element that is not necessarily a part of the definition of malicious conduct by a prisoner: an assault. Though bespattering a law enforcement official with bodily fluids or excrement certainly includes an assault, an assault would also occur where the official is merely placed in reasonable apprehension of such conduct. *See id.* (defining assault); *State v. Johnson*, 264 N.C. 598, 599-600, 142 S.E.2d 151, 153 (1965) (discussing reasonable fear element of assault). Thus, although an assault may be included in the commission of malicious conduct by a prisoner, it need not be:

The divergence between these two offenses is underscored by the fact that a defendant can be guilty of malicious conduct by a prisoner without committing misdemeanor assault on a government official. For example, a prisoner could throw bodily fluids or excrement "at" a prison guard under circumstances where no reasonable person in the guard's position would fear that the contaminant would actually touch him, either because the prisoner is restrained and clearly unable to throw the substance with sufficient force to reach the guard, or because the guard was not in a position to observe the conduct. In this situation, the inmate may be guilty of malicious conduct by a prisoner **without** being guilty of misdemeanor assault on a government official. This is so because G.S. § 14-258.4 requires only that a bodily fluid or excrement be thrown "at" a government official, whereas G.S. § 14-33(c)(4) requires that the official either be touched by the instrument of assault or reasonably fear such a touching.

*Cogdell,* 165 N.C. App. at 378, 599 S.E.2d at 576 (Levinson, J., concurring).

We note also that the legislature apparently intended to address a different problem with each offense. Assaults on government officials have been criminalized to punish, and prevent, attacks against government officials trying to perform public duties. Quite differently, the criminalization of malicious conduct by a prisoner is directed at deterring and punishing the projecting of bodily fluids or excrement at governmental employees by those in custody, whether or not such misconduct amounts to an assault.

Accordingly, defendant was not entitled to have assault on a government official submitted to the jury as a lesser included offense of malicious conduct by a prisoner. This assignment of error is overruled.

[2] In her second argument on appeal, defendant contends that the trial court erred in denying her motion to dismiss the charge of malicious conduct by a prisoner because there was insufficient evidence that she acted knowingly and willfully. We do not agree.

A trial court should deny a motion to dismiss if, considering the evidence in the light most favorable to the State and giving the State the benefit of every reasonable inference, "there is substantial evidence of each essential element of the offense charged and of the

defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "[T]he rule for determining the sufficiency of evidence is the same whether the evidence is completely circumstantial, completely direct, or both." *State v. Wright*, 302 N.C. 122, 126, 273 S.E.2d 699, 703 (1981).

Our Supreme Court has held that

[k]nowledge is a mental state that may be proved by offering circumstantial evidence to prove a contemporaneous state of mind. Jurors may infer knowledge from all the circumstances presented by the evidence. It may be proved by the conduct and statements of the defendant, by statements made to him by others, by evidence of reputation which it may be inferred had come to his attention, and by other circumstantial evidence from which an inference of knowledge might reasonably be drawn.

*State v. Bogle*, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989) (citation omitted). Likewise, the willfulness of a defendant's conduct may be inferred from the circumstances surrounding the crime. *See State v. Agnew*, 294 N.C. 382, 393, 241 S.E.2d 684, 691 (1978).

In the instant case, there was evidence tending to show that defendant demonstrated control of her motor skills when she ran from the police earlier in the evening, that she expressed dissatisfaction with the officers grabbing her hands, and that she drew her breath, puckered her mouth, collected saliva, and then spit on Officer Farabee. Thus, although there was also evidence that defendant was in a stupor, there was ample evidence to support the "knowing and willful" element of malicious conduct by a prisoner. It was for the jury to resolve this factual issue. This assignment of error is overruled.

---

[3] In her final argument on appeal, defendant contends that the trial court erred by overruling her objection to, and motion to strike, Officer Farabee's testimony concerning the precautions normally taken when an arrestee's saliva comes into contact with an officer's eyes or mouth or an open wound. During defendant's trial, Officer Farabee testified as follows:

A: [Officer Farabee:] If [the spit] would have struck one of my bodily fluids, such as my eye or my mouth, any open wounds, possibly my nose, internally, I would have had to go to our city nurse, and then to an approved doctor, go through a series . . . of tests, and then be put on a series

of medications to prevent from [getting] any type of disease that anybody would have.

Q: [Prosecutor:] If you know, how long do you take these medications?

A: I don't know. 30, 60 days, but I don't know.

Even assuming *arguendo* that this testimony should have been excluded, its admission was not prejudicial error. *See* N.C. Gen. Stat. § 15A-1443(a) (2003) ("A defendant is prejudiced by [non-constitutional] errors . . . when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice . . . is upon the defendant."). This assignment of error is overruled.

No error.

Chief Judge MARTIN and Judge ELMORE concur.