629 S.E.2d 617 (2006)
In the Matter of B.C.D.
No. COA05-1123.
Court of Appeals of North Carolina.
May 16, 2006.
Attorney General Roy Cooper, by Assistant Attorney General Letitia C. Echols, for the State.
*618 George Wiseman, Concord, for juvenile-respondent.
LEVINSON, Judge.
Respondent (B.C.D.) appeals from a juvenile adjudication order adjudging him to be delinquent for violating North Carolina's Ethnic Intimidation Statute. We affirm.
The pertinent facts may be summarized as follows: On 2 August 2004, Tasha Hall, an African-American Assistant Principal at Central Cabarrus High School, checked her electronic mail box and found a message which stated, in pertinent part, that:
You are nothing but a filthy n[____] and you need to be fired. If you ever suspend somebody for saying the verbal phrase "n[____]" the KKK will show up on your door step! This is a promise not a threat. So what are you going to do about it b[____]? Not a damn thing but follow my instructions!!!!!!! Bye, you stupid a[] p[iece] of s[____], greasy a[] stinky f[____] N[____]! KKK
Hall alerted the school principal of her receipt of the e-mail, and requested a transfer from the Superintendent of Cabarrus County Schools due to safety concerns. In court, Hall testified that, as an African-American, she feared that physical harm would come to herself, her family or her property. Custodians escorted Hall to her car in the evenings. Hall stopped bringing her children to after-school games or events, and she remained especially cautious of her surroundings in the parking lot, ensuring that she parked within view of security cameras.
With the help of the Federal Bureau of Investigation, school officials traced the subject e-mail to the account of the respondent's grandmother. Hall previously suspended respondent for using racial slurs, including the word "n[____]", towards other students on the school bus.
The respondent testified that he sent the e-mail from his grandparents' computer in June 2004, but delayed its delivery until 31 July 2004. When questioned about the e-mail, respondent told his family that the e-mail was sent as a "joke" to protest a prior disciplinary action by Hall. Respondent argued that while he and his white friend were suspended for using racial epithets on the school bus, the two black girls with whom they were arguing were not. Respondent further testified that the e-mail was not intended to scare Hall, and that racial animus was not the motivation for the e-mail. Rather, according to respondent, Hall was simply the school administrator who suspended the respondent, and Hall happened to be African-American.
The trial court concluded that respondent unlawfully and willfully threatened Hall because of her race in violation of N.C. Gen. Stat. § 14-401.14, and subsequently imposed probation under the supervision of the court counselor for six months. Respondent now appeals, contending the trial court erred by denying his motion to dismiss at the close of all the evidence because there was insufficient evidence that (1) he threatened to assault or damage the property of Hall, and (2) he sent the subject e-mail to Hall because of her race.
We first address respondent's argument that there was insufficient evidence that he threatened to assault or damage the property of Tasha Hall. We disagree.
When ruling on a motion to dismiss, "the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." State v. Crawford, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996).
Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. The trial court must also resolve any contradictions in the evidence in the State's favor. The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility.
State v. Robinson, 355 N.C. 320, 336, 561 S.E.2d 245, 255-56 (2002) (internal citations *619 and quotation marks omitted). "`[T]he rule for determining the sufficiency of evidence is the same whether the evidence is completely circumstantial, completely direct, or both.'" State v. Crouse, 169 N.C.App. 382, 389, 610 S.E.2d 454, 459 (2005) (quoting State v. Wright, 302 N.C. 122, 126, 273 S.E.2d 699, 703 (1981)).
North Carolina's Ethnic Intimidation Statute, codified at N.C. Gen.Stat. § 14-401.14 (2005), provides, in pertinent part, that:
(a) If a person shall, because of race, color, religion, nationality, or country of origin, assault another person, or damage or deface the property of another person, or threaten to do any such act, he shall be guilty of a Class 1 misdemeanor.
The instant case requires us to construe this statute. "Statutory interpretation properly begins with an examination of the plain words of the statute." Correll v. Division of Social Services, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992). In interpreting statutory language, "it is presumed the General Assembly intended the words it used to have the meaning they have in ordinary speech[.]" Nelson v. Battle Forest Friends Meeting, 335 N.C. 133, 136, 436 S.E.2d 122, 124 (1993). When the plain meaning is unambiguous, a court should go no further in interpreting the statute than its ordinary meaning. Id.
By its terms, G.S. § 14-401.14 proscribes personal assaults, damaging or defacing property, or threatening to do either, because of an individual's race, color, religion, nationality or country of origin. The offense of assault has no statutorily prescribed definition. However, an assault is defined at common law as either "a show of violence causing a reasonable apprehension of immediate bodily harm[ ]" or "an intentional offer or attempt by force or violence to do injury to the person of another." State v. Thompson, 27 N.C.App. 576, 577, 219 S.E.2d 566, 567-68 (1975). In ordinary usage, a threat is defined as "[a] communicated intent to inflict harm or loss on another or another's property," Black's Law Dictionary 1519 (8th Ed. 2004), or "[a]n indication of an impending danger or harm[,]" Webster's II New College Dictionary 1176 (3rd Ed. 2005). Thus, a threat constitutes an expressed intent to harm at some point in the future. Accordingly, the respondent could be adjudged delinquent for a violation of G.S. § 14-401.14 if he communicated an intent to inflict bodily harm on Hall or to damage her property at some point in the future.
The subject e-mail, by its own terms, plainly and directly communicated an intent to inflict harm to Hall. The e-mail was sent to an African-American person and was signed "KKK", and promised that persons would "show up on [Hall's] door step" unless she refrained from suspending students who use the term "n[____]." Consequently, because there was sufficient evidence that the respondent threatened to assault Hall in violation of G.S. § 14-401.14, this assignment of error is overruled.
We next address respondent's argument that there was insufficient evidence that the e-mail was sent for a racially motivated purpose. This argument is without merit.
Respondent testified that he sent the e-mail to Hall in protest of her alleged differing treatment against him as compared with others who were African-American. The email contained the racial epithet, "filthy n[____]", and stated that the KKK would retaliate against Hall if she suspended another student who uses the term, "n[____]." Based upon all the evidence of record, we conclude the State presented substantial evidence that respondent sent the e-mail to Hall for racially motivated reasons.
This assignment of error is overruled.
Affirmed.
Judges WYNN and ELMORE concur.