STATE OF NORTH CAROLINA v. LAWRENCE HANTON

No. COA04-1279

(Filed 3 January 2006)

**1. Sentencing— out-of-state convictions—similarity to N.C. offenses—question of law**

The issue of whether a conviction under an out-of-state statute is substantially similar to an offense under North Carolina statutes is a question of law to be resolved by the trial court, and the court here did not err by not requiring that the issue be proven to the jury beyond a reasonable doubt.

**2. Sentencing— out-of-state convictions—not alleged in indictment**

The trial court did not err when sentencing defendant by considering out-of-state convictions where the State had not alleged in the indictment that those convictions were substantially similar to North Carolina offenses.

**3. Sentencing— out-of-state conviction—assault—not similar to N.C. offense**

The trial court erred by finding that the New York offense of second-degree assault was substantially similar to North Carolina's assault inflicting serious injury, as opposed to simple assault. The error was prejudicial because it raised defendant's record level, and he was sentenced at the maximum for that level.

Judge McGEE concurring in part and dissenting in part.

Appeal by defendant from judgment entered 22 June 2004 by Judge Richard D. Boner in Cleveland County Superior Court. Heard in the Court of Appeals 7 June 2005.

*Attorney General Roy Cooper, by William M. Polk, Director, Victims and Citizens Services Section, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Anne M. Gomez, for defendant-appellant.*

LEVINSON, Judge.

Lawrence Hanton (defendant) was convicted of second-degree murder on 24 March 1999. The State presented the trial court with a

prior record level worksheet that included several prior convictions of defendant in the State of New York. Based on the worksheet, the trial court found that defendant had a prior record Level V. The trial court further found one aggravating factor and one mitigating factor, concluding that the aggravating factor outweighed the mitigating factor. Defendant was sentenced to an aggravated term of 353 to 433 months imprisonment. Defendant appealed to this Court. We remanded defendant's case for resentencing, concluding that the trial court had erred in sentencing defendant as a Level V offender when the State had not shown by a preponderance of the evidence that the out-of-state convictions were substantially similar to North Carolina offenses. *State v. Hanton*, 140 N.C. App. 679, 690-91, 540 S.E.2d 376, 383 (2000) (hereinafter *Hanton I*).

Defendant was resentenced on 22 June 2004. The State presented a prior record level worksheet in which three prior convictions that occurred in New York were used to calculate defendant's prior record level: (1) second-degree robbery, (2) third-degree robbery, and (3) attempted assault in the second-degree. The State presented the trial court with certified copies of these three felony convictions and with copies of the New York statutes for "robbery; defined," "robbery in the third degree," "robbery in the second degree," and "assault in the second degree."

N.C. Gen. Stat. § 15A-1340.14(e) (2003) governs the classification of prior convictions from other states for purposes of determining a defendant's prior record level. Pursuant to this statute, the trial court found defendant's New York convictions for second-degree robbery on 15 January 1985, and for third-degree robbery on 3 March 1987, to be substantially similar to North Carolina common law robbery. The trial court therefore classified both of these New York robbery convictions as Class G felonies, and assigned four record points to each offense. The trial court further found that defendant's New York conviction for attempted second-degree assault was substantially similar to North Carolina's assault inflicting serious injury, which is a Class A1 misdemeanor, carrying one point. Defendant was therefore assigned a total of nine prior record points, which gave him a prior record Level IV. Defendant presented evidence of mitigating factors to the trial court, and the trial court sentenced defendant to 251 to 311 months in prison, the statutory maximum sentence in the presumptive range. Defendant appeals.

I.

**[1]** Defendant first argues that the trial court erred by sentencing defendant to 251 to 311 months in prison where the State did not prove to the jury beyond a reasonable doubt that defendant's out-of-state convictions were substantially similar to North Carolina offenses. Specifically, defendant asserts that he is entitled to another resentencing in light of *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004), because the issue as to whether the out-of-state felonies were substantially similar to North Carolina offenses was not submitted to the jury and had the effect of increasing the penalty for defendant's crime.

In *Blakely*, the United States Supreme Court held that " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Blakely*, 542 U.S. at 296, 159 L. Ed. 2d at 409 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455 (2000)). The United States Supreme Court further stated that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, 542 U.S. at 303, 159 L. Ed. 2d at 413-14. In applying *Blakely* to our structured sentencing scheme, our Supreme Court determined that our "presumptive range" is the equivalent of "statutory maximum." *State v. Allen*, 359 N.C. 425, 432, 615 S.E.2d 256, 262 (2005). Thus, the rule of *Blakely*, as applied to North Carolina's structured sentencing scheme, is: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed *presumptive range* must be submitted to a jury and proved beyond a reasonable doubt." *Allen*, 359 N.C. at 437, 615 S.E.2d at 265 (emphasis added).

Although defendant was not sentenced beyond the presumptive range for a Level IV offender, he argues that the trial court's findings regarding the similarity between the New York offenses and the North Carolina offenses increased defendant's prior record level from Level III to Level IV. Defendant asserts that "[b]ut for the trial court's findings that the three out-of-state offenses were to be classified as two Class G felonies and a Class A1 misdemeanor, these three offenses would have been classified as three Class I felonies" under N.C.G.S. § 15A-1340.14(e). Accordingly, defendant would have had only six prior record points and would have been only a Level III offender. Defendant thereby argues that he was sentenced in violation of

*Blakely* because without these findings by the trial court, the "statutory maximum" sentence that defendant could have received was 220 to 273 months, which is the maximum presumptive range sentence for a Level III offender. *See* N.C. Gen. Stat. § 15A-1340.17(c) and (e) (2003). Because of the trial court's findings of substantial similarity, defendant was sentenced to an additional 31 to 38 months in prison.

Defendant concedes that *Blakely* exempts "the fact of a prior conviction" from its requirement that facts "that increase[] the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." *See Blakely*, 542 U.S. at 328, 159 L. Ed. 2d at 412. However, defendant does not argue that his convictions in New York for the prior offenses should have been submitted to the jury. Rather, defendant argues that "the fact that the three New York offenses were *substantially similar* to two Class G felonies and a Class A1 misdemeanor in North Carolina were facts that increase[d] the penalty for [the] crime beyond the statutory maximum." Defendant accordingly argues that the question of whether the New York convictions were substantially similar to North Carolina offenses "must [have been] submitted to a jury, and proved beyond a reasonable doubt."

Defendant supports his argument by citing language in *Hanton I*. In defendant's first appeal, he argued that "the question of substantial similarity is a legal issue" that must be decided by the trial court, and that a defendant could not stipulate to whether an out-of-state offense was substantially similar to a North Carolina offense. However, our Court stated: "While we agree [with the State] that a defendant might stipulate that out-of-state offenses are substantially similar to corresponding North Carolina felony offenses, we do not agree that defendant did so here." *Hanton I*, 140 N.C. App. at 690, 540 S.E.2d at 383. "Stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate. . . . This rule is more important in criminal cases, where the interests of the public are involved." *State v. Prevette*, 39 N.C. App. 470, 472, 250 S.E.2d 682, 683 (citations omitted). Defendant argues that because our Court stated in *Hanton I* that a "defendant may stipulate to the question of substantial similarity between out-of-state and in-state offenses, the question must be one of fact and not of law." Defendant further asserts that if the question of substantial similarity "were a question of law, then it would violate public policy to allow a defendant to stipulate to it." *See Prevette*, 39 N.C. App. at 472, 250 S.E.2d at 683 ("The due administration of the criminal law cannot be left to the stipulations of the parties.").

However, contrary to defendant's argument, the language cited by defendant that "a defendant might stipulate that out-of-state offenses are substantially similar to corresponding North Carolina felony offenses," *see Hanton I*, 140 N.C. App. at 690, 540 S.E.2d at 383, is not controlling. In *Hanton I*, our Court addressed defendant's contention that the State had not met its burden under N.C.G.S. § 15A-1340.14(e) to show that defendant's New York convictions should be classified as a higher class felony than Class I. *Hanton I*, 140 N.C. App. at 689-90, 540 S.E.2d at 382-83. The State had argued that defendant had stipulated to the fact that the New York offenses were substantially similar to the North Carolina offenses, but we found that defendant had not so stipulated, and thus that the State had not met its burden under N.C.G.S. § 15A-1340.14(e). *Hanton I*, 140 N.C. App. at 690, 540 S.E.2d at 383. Our statement that "a defendant might stipulate that out-of-state offenses are substantially similar to corresponding North Carolina felony offenses" was not necessary to our decision to remand for resentencing. *See id.* "Language in an opinion not necessary to the decision is *obiter dictum* and later decisions are not bound thereby." *Trustees of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985); *see also Kornegay v. Broadrick*, 119 N.C. App. 326, 327, 458 S.E.2d 274, 275 (1995). In *Hanton I*, we did not consider the issue before us in the present case, as to whether or not the question of substantial similarity between out-of-state and in-state offenses was a question of law. Therefore, our Court's statement in *Hanton I*, that a defendant *might* stipulate to this question, is non-binding dicta.

Upon examination of the issue, we conclude that whether an out-of-state offense is substantially similar to a North Carolina offense is a question of law that must be determined by the trial court, not the jury. Determining a defendant's prior record involves "a complicated calculation of rules and statutory applications[.]" *State v. Van Buren*, 98 P.3d 1235, 1241 (Wash. Ct. App. 2004). "This calculation is a mixed question of law and fact. The 'fact' is the fact of the conviction," *id.*, which under *Blakely* is not a question for a jury. *See Blakely*, 542 U.S. at 301, 159 L. Ed. 2d at 412. "The law is the proper application of the law to the fact of [a] defendant's criminal record[,]" which often involves, as the present case does, comparing "the elements of a defendant's prior convictions under the statutes of foreign jurisdictions with the elements of crimes under [North Carolina] statutes." *Van Buren*, 98 P.3d at 1241. The comparison of the elements of an out-of-state criminal offense to those of a North Carolina criminal offense "does not require the resolution of disputed facts."

*Id.* Rather, it involves statutory interpretation, which is a question of law. *See Dare County Bd. of Educ. v. Sakaria*, 127 N.C. App. 585, 588, 492 S.E.2d 369, 371 (1997) ("Statutory interpretation presents a question of law.").

Defendant argues that the United States Supreme Court's recent decision in *Shepard v. United States*, —— U.S. ——, 161 L. Ed. 2d 205 (2005), supports defendant's argument that a jury must decide the question of substantial similarity. However, our review of *Shepard* shows that it is inapposite to the present case. The issue before the United States Supreme Court in *Shepard* was the extent of what a sentencing court, in the context of the enhanced sentencing provisions of the Armed Career Criminals Act of 1986, 18 USC § 924(e), could review in determining whether a guilty plea of an offense defined in a nongeneric statute "necessarily admitted elements of the generic offense." *Id.* at ——, 161 L. Ed. 2d at 218. The Supreme Court held that a sentencing court could not, without violating the Sixth Amendment, "look beyond the charging document, the terms of a plea agreement, the plea colloquy, *the statutory definition*, or any explicit finding of the trial judge to which the defendant assented to determine a disputed fact *about* a prior conviction." *United States v. Collins*, 412 F.3d 515, 521 (4th Cir. 2005) (summarizing *Shepard*) (emphasis added); *see also Shepard*, —— U.S. at —— n.4 & ——, 161 L. Ed. 2d at 216 n.4 & 218. Since the trial court in the present case is not looking beyond the statutory definition of the New York offenses, and since the present case does not involve comparing nongeneric statutory offenses with generic offenses, *Shepard* has no bearing on the issue before us.

We conclude that the question of whether a conviction under an out-of-state statute is substantially similar to an offense under North Carolina statutes is a question of law to be resolved by the trial court. Furthermore, the question is so related to a trial court's calculation of a prior record that it is covered by the exception to the *Blakely* rule that "the fact of a prior conviction" does not need to be proven to a jury beyond a reasonable doubt. *See Blakely*, 542 U.S. at 301, 159 L. Ed. 2d at 412. The trial court in the present case did not err in not requiring that this issue be proven to the jury beyond a reasonable doubt, and defendant is not entitled to another resentencing in light of *Blakely*.

II.

[2] Defendant similarly argues that the trial court erred by sentencing defendant to 251 to 311 months in prison where the State did not allege in the indictment that defendant's out-of-state convictions were substantially similar to North Carolina offenses. Defendant asserts that our Supreme Court, in *State v. Lucas,* held that "any fact that increases the maximum penalty for a crime must be alleged in an indictment." *See Lucas,* 353 N.C. 568, 548 S.E.2d 712 (2001), *overruled in part by Allen,* 359 N.C. at 437, 615 S.E.2d at 265. However, defendant misstates the holding in *Lucas,* which only referred to facts that would enhance a sentence under N.C. Gen. Stat. § 15A-1340.16A, which allows for sentence enhancement for carrying a firearm. *See Lucas,* 353 N.C. at 597-98, 548 S.E.2d at 731 ("[I]n every instance where the State seeks an enhanced sentence pursuant to N.C.G.S. § 15A-1340.16A, it must allege the statutory factors supporting the enhancement in an indictment[.]"). The evaluation of the elements in defendant's prior New York convictions fell under N.C.G.S. § 15A-1340.14(e), and was thus part of traditional sentencing. Defendant's sentence was enhanced because of his prior felonies, not because of any aggravating factors. Therefore, *Lucas* is inapplicable to the present case.

Moreover, the rule in *Lucas* cited by defendant was recently overruled by our Supreme Court. *Allen,* 359 N.C. at 438, 615 S.E.2d at 265 (overruling the "language of *Lucas,* requiring sentencing factors which might lead to a sentencing enhancement to be alleged in an indictment"). Furthermore, even before *Allen,* our Supreme Court, in examining short-form indictments, "recognized that the Fifth Amendment's guarantee to indictment by a grand jury was not applicable to the states, and [that] as such, 'all the elements or facts which might increase the maximum punishment for a crime' do not necessarily need to be listed in an indictment." *State v. Hunt,* 357 N.C. 257, 272, 582 S.E.2d 593, 603 (quoting *State v. Wallace,* 351 N.C. 481, 508, 528 S.E.2d 326, 343 (2000)), *cert. denied,* 539 U.S. 985, 156 L. Ed. 2d 702 (2003). As such, defendant's assignment of error is overruled.

III.

[3] Defendant next argues that the trial court erred by finding that the New York offense of second-degree assault was substantially similar to the North Carolina offense of assault inflicting serious injury, when some of the acts that constitute second-degree assault in New York would only amount to simple assault in North Carolina. At defendant's resentencing hearing, the State presented the trial court

with the 1993 version of the New York statute for second-degree assault. The trial court determined that the statute had not been modified since defendant had been convicted of second-degree assault in 1990. The statute provides that a person is guilty of second-degree assault when:

1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or

2. With intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or

3. With intent to prevent a peace officer, police officer, a fireman, including a fireman acting as a paramedic or emergency medical technician administering first aid in the course of performance of duty as such fireman, or an emergency medical service paramedic or emergency medical service technician, from performing a lawful duty, he causes physical injury to such peace officer, police officer, fireman, paramedic or technician; or

4. He recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or

5. For a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness or other physical impairment or injury to another person by administering to him, without his consent, a drug, substance or preparation capable of producing the same; or

6. In the course of and in furtherance of the commission or attempted commission of a felony, other than a felony defined in article one hundred thirty which requires corroboration for conviction, or of immediate flight therefrom, he, or another participant if there be any, causes physical injury to a person other than one of the participants; or

7. Having been charged with or convicted of a crime and while confined in a correctional facility, as defined in subdivision three of section forty of the correction law, pursuant to such charge or conviction, with intent to cause physical injury to another person, he causes such injury to such person or to a third person; or

8. Being eighteen years old or more and with intent to cause physical injury to a person less than eleven years old, the defendant recklessly causes serious physical injury to such person.

NY CLS Penal § 120.05 (1993). The trial court in the present case found that the elements of New York's second-degree assault were substantially similar to North Carolina's assault inflicting serious injury, which is an A1 misdemeanor under N.C. Gen. Stat. § 14-33(c) (2003), because "both statutes require serious injury." The trial court assigned defendant one point for the attempted second-degree assault, which raised defendant's prior record level from Level III to Level IV.

N.C. Gen. Stat. § 14-33(c) provides that "any person who commits any assault, assault and battery, or affray is guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or affray," that person "[i]nflicts serious injury upon another person or uses a deadly weapon[.]" N.C. Gen. Stat. § 14-33(c)(1) (2003). Defendant argues that the trial court erred in finding NY CLS Penal § 120.05 to be substantially similar to N.C.G.S. § 14-33(c) when "at least two of the acts" described in the New York statute do not require the causation of *serious* physical injury. Specifically, defendant asserts that paragraphs six and seven of NY CLS Penal § 120.05 are not analogous to any North Carolina offense, aside from simple assault under N.C. Gen. Stat. § 14-33(a) (2003), which is a Class 2 misdemeanor.

Under paragraph six of NY CLS Penal § 120.05, a defendant is guilty of second-degree assault if the defendant "causes physical injury" to a person while committing another felony or while fleeing from the commission of a felony. Because a defendant need not cause "*serious* injury" under this section of New York's statute on second-degree assault, this particular act does not correspond with assault inflicting serious injury under N.C.G.S. § 14-33(c)(1). Similarly, paragraph seven of NY CLS Penal § 120.05 provides that a defendant is guilty of second-degree assault if the defendant intentionally causes "physical injury to another person" while confined at a correctional facility. Again, absent the requirement that a defendant cause "*serious injury*," this section of the New York offense does not correspond with N.C.G.S. § 14-33(c).

Defendant argues, and we agree for the reasons that follow, that because neither paragraphs six nor seven of NY CLS Penal § 120.05 require "serious injury", the offense most substantially similar to the New York offense on this record was simple assault.

N.C.G.S. § 15A-1340.14(e) provides that either the State or the defendant may prove by a preponderance of evidence whether an out-

of-state offense is substantially similar to a North Carolina offense. However, the statute does not instruct the trial court how to determine which North Carolina offense is most substantially similar to the out-of-state offense when the out-of-state offense has elements that are similar to multiple North Carolina offenses. In light of such an ambiguity in a criminal statute, the rule of lenity requires us to interpret the statute in favor of defendant. *See State v. Boykin*, 78 N.C. App. 572, 577, 337 S.E.2d 678, 681 (1985) ("[T]he 'rule of lenity' forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention."). As such, on this record, where the prosecuting authority relied only on the statutory offenses themselves in making its substantial similarity arguments, the New York second-degree assault offense is most substantially similar to North Carolina's offense of simple assault set forth in N.C.G.S. § 14-33(a).

The State argues that our Court addressed this very issue in *State v. Rich*, 130 N.C. App. 113, 502 S.E.2d 49 (1998), which the State argues controls the present case. The defendant in *Rich* argued that "his conviction of 'assault with intent to cause serious injury,' occurring in New York, should have been classified by the trial court as a Class A1 misdemeanor rather than a Class I felony for sentencing purposes." *Id.* at 117, 502 S.E.2d at 52. However, we never reached the merits of this issue because the defendant had failed to preserve the issue for appeal pursuant to N.C.R. App. P. 10. *Id.* Therefore, *Rich* provides no authority regarding defendant's assignment of error in the present case.

Thus, we conclude that the trial court erred in finding New York's second-degree assault to be substantially similar to North Carolina's assault inflicting serious injury, which is a Class A1 misdemeanor, as opposed to simple assault, which is a Class 2 misdemeanor. *See* N.C.G.S. § 14-33(a). Under N.C. Gen. Stat. § 14-2.5 (2003), "an attempt to commit a misdemeanor or a felony is punishable under the next lower classification as the offense the offender attempted to commit." Therefore, defendant's prior New York conviction for attempted second-degree assault should have been treated as a Class 3 misdemeanor, which would have not had any point value for prior record purposes. *See* N.C. Gen. Stat. § 15A-1340.14(b)(5) (2003). Since the trial court erroneously determined that defendant's New York conviction for attempted second-degree assault was substantially similar to the North Carolina offense of assault inflicting serious injury, defendant was improperly assigned one prior record point for this offense.

STATE v. HANTON

[175 N.C. App. 250 (2006)]

This one record point raised defendant's prior record level from a Level III to a Level IV. As noted above, the "statutory maximum" sentence that defendant could have received was 220 to 273 months, which is the maximum presumptive range sentence for a Level III offender. *See* N.C. Gen. Stat. § 15A-1340.17(c) and (e) (2003). However, defendant was sentenced to the maximum sentence for a Level IV offender, and the trial court's error was therefore prejudicial.

We observe that the following issues are not presented by this appeal: whether (1) G.S. § 15A-1340.14(e) authorizes a determination of the underlying conduct giving rise to the out-of-state conviction when making a substantial similarity conclusion; and (2) if so, the extent to which *Blakely* may apply. Here, the State relied only on an evaluation of the statutes in making its substantial similarity arguments before the trial court, and we limit our holding to these circumstances.

We reverse the trial court's order and judgment sentencing defendant to 251 to 311 months imprisonment, and grant defendant a new sentencing hearing.

Affirmed in part; reversed and remanded for resentencing.

Judge HUNTER concurs.

Judge McGEE concurs in part and dissents in part.

McGEE, Judge, concurring in part and dissenting in part.

I concur with the majority's determination of the second and third issues, but respectfully dissent as to the first issue because I disagree with the majority's overly broad conclusion that "whether an out-of-state offense is substantially similar to a North Carolina offense is a question of law that *must be* determined by the trial court, not a jury." (emphasis added).

In the present case, it appears from the record that the trial court solely conducted a comparison of the elements of the two statutes and did not appear to undertake any type of factual analysis of the circumstances underlying defendant's prior conviction. The trial court relied only on the statutes in making its determination, and therefore was within the bounds of *Shepard*. However, the majority's conclusion that substantial similarity is a question of law that a trial court, and not a jury, must determine may lead a trial court into an inherent

factual analysis that *Shepard* and *Blakely* require be determined by a jury. Absent guidance by N.C. Gen. Stat. § 15A-1340.14(e) (2003) on how a trial court should determine substantial similarity, a trial court may undertake an inherent factual inquiry into a defendant's conduct to resolve whether the defendant would have been convicted under a similar North Carolina law.

Under *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004), " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Blakely*, 542 U.S. at 301, 159 L. Ed. 2d at 412 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455 (2000)). The rule of *Blakely*, as applied to North Carolina's structured sentencing scheme through *State v. Allen*, is: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed presumptive range must be submitted to a jury and proved beyond a reasonable doubt." *Allen*, 359 N.C. 425, 437, 615 S.E.2d 256, 265 (2005). After *Blakely*, the North Carolina General Assembly enacted Session Law 2005-145 (the *Blakely* bill), which revised the Structured Sentencing Act to conform with the Sixth Amendment protections afforded a defendant at sentencing by *Blakely*. *See* 2005 N.C. Sess. Laws ch. 145. However, the *Blakely* bill did not amend N.C.G.S. § 15A-1340.14(e), thus leaving trial courts without guidance as to how *Blakely* might affect a determination of substantial similarity under that statute. *See* 2005 N.C. Sess. Laws ch. 145.

Defendant contends that a determination of substantial similarity under N.C.G.S. § 15A-1340.14(e) involves a fact other than that of a prior conviction, and thereby meets the first part of the *Blakely/Allen* guarantee of the right to a jury trial. The majority overrules defendant's argument by holding that the determination of substantial similarity involves statutory interpretation, which is a question of law, and that the "comparison of the elements of an out-of-state criminal offense to those of a North Carolina criminal offense 'does not require the resolution of disputed facts.' " (quoting *State v. Van Buren*, 98 P.3d 1235, 1241 (Wash. Ct. App. 2004)). I cannot agree that this is always the case.

In *Shepard*, the Supreme Court reasoned that, while the disputed fact of whether a prior conviction was violent could "be described as a fact about a prior conviction, it [was] too far removed from the conclusive significance of a prior judicial record, and too much like the

findings subject to *Jones* and *Apprendi*, to say that *Almendarez-Torres* clearly authorize[d] a [trial court] to resolve the dispute." *Shepard v. United States*, 544 U.S. ——, ——, 161 L. Ed. 2d 205, 217. In light of *Shepard*, the question for our Court is whether a finding of substantial similarity under N.C.G.S. § 15A-1340.14(e) is "too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to *Jones* and *Apprendi*, to say that *Almandarez-Torres* clearly authorizes a [trial court] to resolve the dispute." *Id.* Findings of fact subject to *Jones* and *Apprendi* are those findings "[o]ther than the fact of a prior conviction." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455; *see also Blakely*, 542 U.S. at 301, 159 L. Ed. 2d at 412; *Allen*, 359 N.C. at 437, 615 S.E.2d at 265. I conclude that a finding of substantial similarity is not close enough to the fact of a prior conviction to say that a trial court must always make the determination.

In deciding *Shepard*, the Supreme Court built upon the rationale of its earlier Sixth Amendment case, *Taylor v. United States*, 495 U.S. 575, 109 L. Ed. 2d 607 (1990), in which the Court interpreted ACCA to require a trial court to examine "only [] the fact of conviction and the statutory definition of the prior offense" to determine whether a defendant's prior conviction could be characterized as a "burglary" under the enhancement statute. *Taylor*, 495 U.S. at 602, 109 L. Ed. 2d at 629. In so holding, the Court anticipated that allowing a broader evidentiary inquiry by a trial court might raise issues of violation of a defendant's right to a jury trial. *Id.* at 601, 109 L. Ed. 2d at 629. Following this concern, the Supreme Court later imposed the rule, in *Jones* and *Apprendi*, that any fact other than a prior conviction must be found by the jury. *See Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455; *see also Jones*, 526 U.S. 227, 243 n.6, 143 L. Ed. 2d 311, 326 n.6 (1999).

The Supreme Court in both *Taylor* and *Shepard* read the ACCA recidivism statute as a categorical approach to establishing the fact of a prior conviction. "[T]he enhancement provision always has embodied a categorical approach to the designation of predicate offenses. . . . Congress intended that the enhancement provision be triggered by crimes having certain specified elements[.]" *Taylor*, 495 U.S. at 588, 109 L. Ed. 2d at 620-21; *see also Shepard*, 544 U.S. at ——, 161 L. Ed. 2d at 213-14. The Supreme Court explained that ACCA referred to predicate offenses "in terms not of prior conduct but of prior 'convictions.' " *Shepard*, 544 U.S. at ——, 161 L. Ed. 2d at 213-14 (quoting *Taylor*, 495 U.S. at 600-01, 109 L. Ed. 2d 607, 628). Like

ACCA, N.C.G.S. § 15A-1340.14(e) purports to rely on prior convictions, not on the precise conduct that led to the convictions. However, unlike ACCA, our sentencing statute does not define which categories of crimes trigger enhancement. As such, a trial court's determination under N.C.G.S. § 15A-1340.14(e) is not necessarily one of mere statutory interpretation. Rather, a trial court might actually be undertaking a determination of the disputed fact of whether conduct underlying a conviction for an out-of-state crime renders the offense similar to a North Carolina crime.

In *State v. Poore*, 172 N.C. App. 839, 616 S.E.2d 639 (2005), our Court recently decided that a determination by a trial court, rather than a jury, that all elements of a defendant's current offense were included in a prior offense, for purposes of determining a defendant's prior record level, did not violate *Blakely*. We held that "neither *Blakely* nor *Allen* preclude the trial court from assigning a point in the calculation of one's prior record level where 'all the elements of the present offense are included in [a] prior offense.'" *Poore*, 172 N.C. App. at 840, 616 S.E.2d at 642 (quoting N.C. Gen. Stat. § 15A-1340.14(b)(6) (2003)). "The exercise of assigning a point for the reason set forth in G.S. § 15A-1340.14(b)(6) is akin to the trial court's determination that [the] defendant had in fact been convicted of certain prior offenses, and is not something that increases the 'statutory maximum' within the meaning of *Blakely* or *Allen*." *Poore*, 172 N.C. App. at 843, 616 S.E.2d at 642; *see also State v. Jordan*, 174 N.C. App. 479, 621 S.E.2d 229 (2005) (holding that *Blakely* and *Allen* were not implicated where a trial court determined that the defendant had prior North Carolina convictions, raising the defendant from Level I to Level II). However, a determination of substantial similarity under N.C.G.S. § 15A-1340.14(e) is not as akin to the fact of a prior conviction, nor is it always necessarily a question of law. Rather, a determination under N.C.G.S. § 15A-1340.14(e) has the potential to lead a trial court beyond the statutory elements of a crime and into fact-finding that is the proper province of a jury. *See Blakely*, 542 U.S. at 308, 159 L. Ed. 2d at 417 ("[T]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury."); *see also State v. Wissink*, 172 N.C. App. 829, 837, 617 S.E.2d 319, 325 (2005) (recognizing that while "the fact of a defendant's probationary status is analagous to and not far-removed from the fact of a prior conviction[,]" our Court was "bound by the language in *Blakely*, *Apprendi* and *Allen* that states that only

the fact of a prior conviction is exempt from being proven to a jury beyond a reasonable doubt").

The Fourth Circuit Court of Appeals recently considered *Shepard* in the case of *United States v. Washington*, 404 F.3d 834 (4th Cir. 2005). Although the Fourth Circuit's decision rests on federal law rather than state law, its analysis is instructive. In *Washington*, the trial court concluded, after fact-finding, that the defendant's prior conviction of breaking and entering was a "violent" offense under the federal sentencing guidelines, because the trial court found that the prior offense " 'otherwise involve[d] conduct that presents a serious potential risk of physical injury to another.' " *Washington* at 838 (quoting USSG § 4B1.2(a)(2)). In making its determination, the trial court relied on extra-indictment evidence, namely a memorandum prepared by the State and the questioning of counsel about the specifics of the prior offense. The Fourth Circuit held that under the line of cases following *Apprendi*, the trial court's determination that the defendant's prior conviction presented a serious potential risk of physical injury "involved more than the 'fact of a prior conviction' exempted by *Apprendi* from Sixth Amendment protection." *Washington*, 404 F.3d at 841. The Fourth Circuit held that the determination was a disputed fact " '*about* a prior conviction' " to which Sixth Amendment protections apply. *Washington* at 842 (quoting *Shepard*, 544 U.S. at ——, 161 L. Ed. 2d at 217) (emphasis in *Washington*). The Fourth Circuit continued:

> In these circumstances, the sentencing court relied on facts outside of the prior indictment and resolved a disputed fact "*about* a prior conviction," – namely, that the prior conviction was one which "otherwise involve[d] conduct that presents a serious potential risk of physical injury to another." These findings are "too far removed from the conclusive significance of a prior judicial record," and "too much like the findings subject to *Jones* and *Apprendi*[] to say that *Almandarez-Torres* clearly authorizes a judge to resolve the dispute[.]" This process and its results thus raise the very "risk" identified in *Shepard*, that Sixth Amendment error occurred.

*Washington*, 404 F.3d at 842 (internal citations omitted).

Particularly where, as in the present case, the elements of a foreign conviction are broader than those of a North Carolina offense, a trial court may very well undertake an inherent factual inquiry into defendant's conduct to resolve whether defendant would

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

have been convicted under a similar North Carolina law. Such an inquiry is not merely a question of law, as determined by the majority opinion, and is " 'too far removed from the conclusive significance of a prior judicial record,' and 'too much like the findings subject to *Jones* and *Apprendi*[] to say that *Almandarez-Torres* clearly authorizes a judge to resolve the dispute[.]' " *Id.* Such an inquiry and its results thus present the risk identified in *Shepard*, a violation of a defendant's Sixth Amendment right to a jury trial under *Blakely*, and would require the jury, not the trial court, to determine substantial similarity.