STATE OF NORTH CAROLINA
v.
AISSIA LALMERIA HARDIE
No. COA07-1
Court of Appeals of North Carolina.
Filed August 7, 2007
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Yvonne B. Ricci, for the State.
Mercedes O. Chut, for defendant-appellant.
CALABRIA, Judge.
Aissia Lalmeria Hardie ("defendant") appeals from a judgment entered upon a jury verdict finding him guilty of malicious conduct by a prisoner. We find no error.
On 13 November 2005, defendant was an inmate in the housing area of the Segregation Unit of Craven Correctional Institution ("DOC"). Inmates are assigned to segregation-unit housing "per DOC policy" for misconduct or non-compliance with prison rules.
At trial, the State presented evidence that Correctional Officer Brandon Garcia worked in the segregation-unit housing area. As Garcia was escorting defendant from his cell to the recreational area, defendant exited the cellblock into a hallway without permission. Garcia ran in front of defendant and ordered him to either return to the cellblock or go back to his cell. Defendant raised his hands and brandished an ink pen. As Correctional Officer Michael Anderson approached from his left, defendant swung his arms, struck Garcia on the cheek with his elbow, and started to run. The two officers brought defendant to the floor, where he resisted their attempts to subdue him by "trying to move his arms and kicking with his legs." With Anderson straddling defendant's legs, Garcia immobilized his arms and told him to calm down. Face to face with Garcia, defendant spat at him. Garcia turned his head but was struck in the left ear. He placed his elbow beneath defendant's chin and raised it, directing defendant's face away from him. Defendant told Garcia to "tell me you are sorry and I will behave." Additional officers arrived and returned defendant to his cell. Garcia reported to the medical unit, where a nurse cleaned his ear and tended to the scratches he sustained during the incident.
Correctional Officer Michael Anderson testified that he opened the "rec cage" to allow Garcia to bring defendant into the recreational area on 13 November 2005. Anderson saw defendant remove a pen from the podium as he passed through the door. Ignoring Anderson's instruction to stop, defendant continued forward until "Garcia got in front of him [and] told him to turn around." Defendant "started waving his hand with the pen" and swinging his elbows. As Anderson "tried to turn him around, he took off even faster, and he struck Officer Garcia in the face." The officers brought defendant to the floor. Anderson straddled defendant's legs, while "Garcia was taking control of his upper body." When the officers had subdued defendant's arms and legs, "[h]e was laying down, and he spit up at Officer Garcia's face." After spitting at Garcia, defendant said "something to the effect that if you say you are sorry I'll behave."
Correctional Officer Michael Singletary also testified that he witnessed defendant "spit towards Officer Garcia" on 13 November 2005, as they were "almost face to face" on the ground. Seeing Anderson and Garcia struggle with defendant, Singletary "called a code yellow, which is a code for State facility, officer needs help, fight in progress."
The trial court denied defendant's motion to dismiss at the conclusion of the evidence. After the jury returned a guilty verdict, defendant stipulated to a prior record level III and was sentenced to a minimum of twenty-one months to a maximum of twenty-six months in the North Carolina Department of Correction. He timely filed notice of appeal.
Defendant first claims the trial court erred in denying his motion to dismiss the charge of malicious conduct at the conclusion of the evidence. He argues that the State did not prove that he "acted volitionally" in spitting upon Garcia. Defendant further avers that the State failed to adduce "evidence of an official nature that established [his] status as resident of the correctional facility."
"When ruling on a defendant's motion to dismiss a criminal action, the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense. If so, the motion to dismiss is properly denied." State v. Dudley, 151 N.C. App. 711, 713, 566 S.E.2d 843, 845 (2002) (internal quotations and citations omitted). Substantial evidence means "that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." State v. Alston, 341 N.C. 198, 245, 461 S.E.2d 687, 713 (1995) (quoting State v. Porter, 303 N.C. 680, 685, 281 S.E.2d 377, 381 (1981)). In reviewing the denial of a motion to dismiss, "[t]he evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom." Alston at 245, 461 S.E.2d at 713 (citing State v. Robbins, 309 N.C. 771, 774-75, 309 S.E.2d 188, 190 (1983)).
As defined by N.C. Gen. Stat. § 14-258.4(a) (2006), the essential elements of the offense of malicious conduct by a prisoner are as follows:
(1) the defendant threw, emitted, or caused to be used as a projectile a bodily fluid or excrement at the victim;
(2) the victim was a State or local government employee;
(3) the victim was in the performance of his or her State or local government duties at the time the fluid or excrement was released;
(4) the defendant acted knowingly andwillfully; and
(5) the defendant was in the custody of the Department of Correction . . . at the time of the incident.
State v. Smith, 163 N.C. App. 771, 773-74, 594 S.E.2d 430, 432 (2004) (quoting State v. Robertson, 161 N.C. App. 288, 292-93, 587 S.E.2d 902, 905 (2003)). Because defendant challenges only the sufficiency of the State's evidence as to (4) and (5), we shall limit our analysis to these elements.
To establish that a defendant "acted knowingly and willfully" in committing an act, the State must prove conditions of mind which defy direct observation. State v. Crouse, 169 N.C. App. 382, 389, 610 S.E.2d 454, 459 (2005) (quoting State v. Bogle, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989)); citing State v. Agnew, 294 N.C. 382, 393, 241 S.E.2d 684, 691 (1978)), disc. review denied, 359 N.C. 637, 616 S.E.2d 923 (2005). This type of intangible element of an offense may be shown by circumstantial evidence such as the defendant's statements and conduct before and after the act in question, and his manner of performing the act. See Crouse, 169 N.C. App. at 389, 610 S.E.2d at 459.
We find the testimony of the State's eyewitnesses sufficient to create a reasonable inference that defendant acted knowingly and willfully in spitting on Garcia. The officers described defendant leaving his cellblock without authorization and ignoring orders to stop. When Garcia blocked his path, defendant brandished a makeshift weapon, struck Garcia in the face with his elbow, and attempted to flee. At the time he spat at Garcia, defendant hadbeen immobilized by Garcia and Anderson and was face to face with Garcia on the ground. After spitting, defendant offered to "behave" in exchange for an apology from Garcia, indicating the deliberate nature of his misconduct toward the officer. Finally, we note that Anderson and Singletary described defendant as spitting "up at" and "toward" Garcia.
We further find substantial evidence to support a finding that "defendant was in the custody of the Department of Correction . . . at the time of the incident." See Smith, 163 N.C. App. at 774, 594 S.E.2d at 432. Three officers from DOC attested to defendant's status as an inmate at the State prison facility. Garcia described retrieving defendant from his cell in the segregation unit, and noted that inmates were assigned to segregation-unit housing "per DOC policy[.]" While defendant points to the lack of "official" evidence of his custody status, he cites no authority that would require the State to "introduce the Judgment and Commitment Order that placed [him] in the custody of the North Carolina Department of Correction[.]" See N.C. R. App. P. 28(b)(6). We overrule this assignment of error.
Defendant next claims the trial court erred by accepting the State's stipulation to his prior record level III at sentencing. He notes that the prior offenses listed on his sentencing worksheet included a conviction from the State of New York for second degree robbery. Because the appropriate classification of an out-of-state conviction under N.C. Gen. Stat. § 15A-1340.14(e) (2006) is a question of law, defendant contends that the court could not relyon a stipulation to resolve this issue. See State v. Hanton, 175 N.C. App. 250, 253-255, 623 S.E.2d 600, 604 (2006) ("conclud[ing] that whether an out-of-state offense is substantially similar to a North Carolina offense is a question of law that must be determined by the trial court").
We agree with the State that defendant has failed to preserve this issue for review on appeal. The scope of appellate review is limited to those issues presented by assignments of error set out in the record on appeal. N.C. R. App. P. 10(a) (2007). The record filed in this Court by defendant includes a single assignment of error addressing the denial of his motion to dismiss. Because defendant's argument regarding his prior record level is not supported by an assignment of error in the record, it is not properly before this Court. See State v. Jordan, 162 N.C. App. 308, 313, 590 S.E.2d 424, 428 (2004). The record further reflects that the two points assigned to defendant's New York conviction had no effect on his prior record level  a fact rendering any error on this issue harmless. See State v. Allah, 168 N.C. App. 190, 195-96, 607 S.E.2d 311, 315 (citing State v. Adams, 156 N.C. App. 318, 324, 576 S.E.2d 377, 381-82 (2003)), disc. review denied, 359 N.C. 636, 618 S.E.2d 232 (2005). The reduction of defendant's total record points from eight to six would leave him with a record level III. N.C. Gen. Stat. § 15A-1340.14(c)(2) (2005).
Further, we find no error in the court's classification of defendant's out-of-state conviction. Second degree robbery is a felony under New York law. NY CLS Penal § 160.10 (2006) ("Robberyin the second degree is a class C felony."). The out-of-state conviction was thus properly treated as a Class I felony for purposes of calculating defendant's prior record level, absent proof from either party that a greater or lesser classification was warranted. N.C. Gen. Stat. § 15A-1340.14(e) (2005). While it appears that this crime corresponds to the Class G felony of common law robbery under N.C. Gen. Stat. § 14-87.1 (2006), see Hanton, 175 N.C. App. at 251, 623 S.E.2d at 602, the trial court did not assign four points based upon this higher classification.
No error.
Chief Judge MARTIN and Judge JACKSON concur.
Report per Rule 30(e).