**STATE v. CLAXTON**

[225 N.C. App. 150 (2013)]

STATE 'OF NORTH CAROLINA
v.
ERNESTO CLAXTON

No. COA12-556

Filed 15 January 2013

**1. Sentencing—prior record level—calculation—New York records—preponderance of evidence**

The trial court did not err in a felonious breaking and entering, felonious larceny after breaking and entering, and felony possession of burglary tools case by using the New York Department of Criminal Investigation records to calculate defendant's prior record level' even though defendant alleged there were inconsistencies. Since the State was only required to prove defendant's prior convictions by a preponderance of evidence, the State met its burden.

**2. Sentencing—prior New York drug convictions—substantially similar to North Carolina Class G felonies**

The trial court did not err in a felonious breaking and entering, felonious larceny after breaking and entering, and felony possession of burglary tools case by determining that two of defendant's prior New York drug convictions were substantially similar to North Carolina Class G felonies. The relevant New York and North Carolina drug schedules substantially overlapped.

Appeal by defendant from judgment entered 12 October 2011 by Judge Laura A. Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 October 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Mary S. Mercer, for the State.*

*Harrington, Gilleland, Winstead, Feindel & Lucas, LLP, by Anna S. Lucas, for Defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Ernesto Claxton ("Defendant") appeals a final judgment entered after a jury convicted him of: (i) felonious breaking and entering; (ii) felonious larceny after breaking and entering; and (iii) felony possession of burglary tools. Defendant contends the trial court erred by: (i) sentencing him as a Level V offender despite inconsistencies in the

STATE v. CLAXTON

[225 N.C. App. 150 (2013)]

records of his prior out-of-state convictions and (ii) determining two of the prior out-of-state convictions were "substantially similar" to North Carolina Class G felonies. Upon review, we affirm.

## I. Facts & Procedural History

Defendant was indicted on 28 March 2011 for: (i) felonious breaking and entering (N.C. Gen. Stat. § 14-54(a) (2011)); (ii) larceny after breaking and entering (N.C. Gen. Stat. § 14-72(b)(2) (2011)); (iii) possession of implements of housebreaking (N.C. Gen. Stat. § 14-55 (2011)); (iv) felonious possession of stolen goods (N.C. Gen. Stat. § 14-71.1 (2011)); and (v) having attained habitual felon status (N.C. Gen. Stat. § 14-7.1 (2011)). The State's evidence tended to show the following facts.

On the night of 29 October 2010, Donald Wayne Costner, Jr. ("Costner"), was working as a security guard for an apartment complex construction site in Charlotte. Around 10:50 pm, Costner saw a flashlight shining in an unfinished building. He also heard a noise that "sounded like metal pipes on concrete being kicked." Costner approached the building, called 911, and then observed Defendant walk out of the building carrying two sinks. Costner drew his gun, handcuffed Defendant, and held him until police arrived. Charlotte-Mecklenburg Police Department Patrol Officer David Georgian subsequently arrived and arrested Defendant for burglary.

Defendant's trial occurred during the 10 October 2011 Criminal Session of the Mecklenburg County Superior Court. Defendant pled not guilty to all charges. The jury found Defendant guilty of (i) felonious breaking and entering; (ii) felonious larceny pursuant to breaking and entering; and (iii) possession of burglary tools. It found Defendant not guilty of (i) felonious possession of stolen goods and (ii) attaining habitual felon status.

At the 12 October 2011 sentencing hearing, the State presented the trial court with North Carolina and New York Department of Criminal Investigation ("DCI") records of Defendant's prior criminal convictions.

The North Carolina DCI Record ("NC DCI Record") described Defendant as follows:

Name:                    CLAXTON, ERNESTO RICARDO

. . .

FBI Number:              162769P9
Black/Male
Date of Birth:           09-14-1958
Birth Place:             NY

. . .

Height:                  6 Ft. 02 In.
Weight:                  175 Lbs.
Eyes:                    BROWN
Hair Color:              BLACK

The New York DCI Record ("NY DCI Record") provided slightly different information:

Subject Name(s) CLAXTON, ERNEST R
                CLASTON, ERNEST
                CIAXTON, ERNEST
                CLAYTON, ERNEST R
                CHAXTON, ERNEST

. . .

FBI Number      162769P9

. . .

Sex             Male
Race            Black
                Asian

. . .

Height          5'10"
Weight          175
Date of Birth   1958-09-14
                1956-09-14
                1948-09-14
                1958-09-04
                1958-09-15
Hair Color      Black
Eye Color       Brown

| Place of Birth | New York |
| | Unknown |
| | Dominican Republic |
| | Dominica |
| | Denmark |
| Ethnicity | Hispanic or Latino |

The trial court found "the [NY] DCI record [was] a competent record" to determine his prior record level for sentencing. The NY DCI Record listed 16 prior convictions, including, *inter alia*, felony convictions for (i) "Criminal Sale Controlled Substance-3rd: Narcotic Drug (220.39 [])" ("Third Degree Drug Sale"), and (ii) "Criminal Sale Controlled Substance-5th degree (220.31[])" ("Fifth Degree Drug Sale"). *See* N.Y. Penal Law §§ 220.39, 220.31 (2012). The NC DCI Record listed one prior Driving While Impaired conviction.

The State argued the New York convictions for Third Degree Drug Sale and Fifth Degree Drug Sale were "substantially similar" to North Carolina Class G felonies under N.C. Gen. Stat. § 90-95-(2011). It provided the trial court with the relevant New York and North Carolina statutes. At several points, the District Attorney contended the two New York drug convictions were for sale of heroin. After examining the statutes, the trial court determined Defendant's two New York drug offenses were "substantially similar" to North Carolina Class G felonies for sentencing purposes. Based on these records, the trial court assigned Defendant 17 Prior Record Level points, making him a Level V offender.

In accordance with sentencing guidelines, the court sentenced Defendant to two sentences of a minimum of 15 months and a maximum of 18 months to run consecutively for (i) felonious breaking and entering and (ii) felonious larceny after breaking and entering. The court also sentenced Defendant to 9 to 11 months to run concurrently for possession of burglary tools. Defendant gave timely notice of appeal.

## II. Jurisdiction & Standard of Review

This Court has jurisdiction to hear the instant case pursuant to N.C. Gen. Stat. § 7A-27(b) (2011). "When a defendant assigns error to the sentence imposed by the trial court, our standard of review is 'whether [the] sentence is supported by evidence introduced at the trial and sentencing hearing.' " *State v. Deese*, 127 N.C. App. 536, 540, 491 S.E.2d 682, 685 (1997) (quoting N.C. Gen. Stat. § 15A-1444(a1)

(Cum. Supp. 1996) (alteration in original)). "The State bears the burden of proving, by a preponderance of the evidence, that a prior conviction exists and that the offender before the court is the same person as the offender named in the prior conviction." N.C. Gen. Stat. § 15A-1340.14(f) (2011).

"[W]hether an out-of-state offense is substantially similar to a North Carolina offense is a question of law that must be determined by the trial court." *State v. Hanton*, 175 N.C. App. 250, 254, 623 S.E.2d 600, 604 (2006). We review questions of law *de novo. State v. Harris*, 198 N.C. App. 371, 377, 679 S.E.2d 464, 468 (2009). " 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

> If the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points.

N.C. Gen. Stat. § 15A-1340.14(e) (2011)

## III. Analysis

Defendant makes two arguments on appeal: (1) the trial court erred in sentencing him as a Level V offender when there were inconsistencies in his NY and NC DCI Records; and (2) the trial court erred in determining two of his prior New York drug convictions were "substantially similar" to North Carolina Class G felonies. Upon review, we affirm the trial court's decisions.

### A. Inconsistencies in DCI Records

[1] Defendant first contends the trial court erred by using the NY DCI Record to calculate his prior record level. Specifically, he argues the State did not meet its burden of proving Defendant's prior out-of-state convictions due to inconsistencies in the NC and NY DCI Records. We disagree.

According to N.C. Gen. Stat. § 15A-1340.14(f), prior convictions can be proven by:

(1) Stipulation of the parties.

(2) An original or copy of the court record of the prior conviction.

(3) A copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts.

(4) Any other method found by the court to be reliable.

N.C. Gen. Stat. § 15A-1340.14(f) (2011). Documents listed under subsections (2) and (3) of this statute are "prima facie evidence that the offender named is the same person as the offender before the court, and that the facts set out in the record are true." *Id.*

For DCI records, "minor clerical errors, . . . standing alone, do not render the evidence incompetent." *State v. Safrit*, 154 N.C. App. 727, 730, 572 S.E.2d 863, 866 (2002). In *Safrit*, the State offered court records and a DCI record to determine the defendant's prior record level. *Id.* at 729, 572 S.E.2d at 866. The defendant argued the evidence was insufficient because the documents "erroneously stated an incorrect disposition date and incorrectly identified defendant as 'Howard Safriet, W, M.' instead of 'Howard Safrit.' " *Id.* This Court held these "minor clerical errors" did not render the documents insufficient as evidence of prior out-of-state convictions. *See id.* at 730, 572 S.E.2d at 866. The documents' sufficiency was further supported by the fact that they contained identical social security numbers and driver's license numbers. *See id.*

Additionally, DCI records containing a "detailed description of defendant including his fingerprint identifier number and FBI number" have "sufficient identifying information with respect to defendant to give it the indicia of reliability." *State v. Rich*, 130 N.C. App. 113, 116, 502 S.E.2d 49, 51 (1998).

In the present case, Defendant contends the NY DCI Record is not sufficient evidence of his prior out-of-state conviction due to inconsistencies with the NC DCI Record. The trial court found the State met its evidentiary burden. We agree with the trial court's determination.

Like the discrepancies in *Safrit*, the inconsistencies of the DCI Records in this case are simply "minor clerical errors." *See Safrit*, 154 N.C. App. at 730, 572 S.E.2d at 866. Here, the trial court was presented with DCI Records from North Carolina and New York. The documents are dissimilar in the following particulars. First, the NC DCI Record

lists Defendant's name as "Ernesto Ricardo Claxton," while the NY DCI Record provides five names: "Ernest R Claxton," "Ernest Claston," "Ernest Ciaxton," "Ernest R Clayton," and "Ernest Chaxton." Second, the NC DCI Record describes Defendant's race as "Black," but the NY DCI Record lists his race as both "Black" and "Asian" and his ethnicity as "Hispanic or Latino." Third, the NC DCI Record provides a birth date of 14 September 1958, while the NY DCI Record provides five possible birthdates: 14 September 1958, 14 September 1956, 14 September 1948, 4 September 1958, and 15 September 1958. Fourth, although the NC DCI Record lists Defendant's birthplace as New York, the NY DCI Record lists five possibilities: "New York," "Unknown," Dominican Republic," "Dominica," and "Denmark." Lastly, the NC DCI Record describes Defendant's height as six feet, two inches, while the NY DCI Record gives a height of five feet, ten inches.

Nonetheless, the NC and NY DCI Records still have numerous similarities. *See id.* at 730, 572 S.E.2d at 866. First, the Records list identical weights, eye colors, hair colors, and FBI numbers. As we held in *Rich*, DCI records with identical FBI numbers have an "indicia of reliability." *See Rich*, 130 N.C. App. at 116, 502 S.E.2d at 51. Second, even though the spelling of the names in the two DCI Records vary slightly, they are substantially similar. Third, although the NY DCI Record provides five birthdates and birth locations, it lists the birthdate (14 September 1958) and birth location (New York) provided in the NC DCI Record.

Consequently, since the burden of the State is only to produce a preponderance of evidence of Defendant's prior convictions, we conclude the State has met its burden here. Thus, the trial court did not err in using the NY DCI Record to determine Defendant's prior record level.

## B. Substantially Similar Offenses

**[2]** Defendant next argues the trial court committed prejudicial error in determining his prior New York convictions for (i) Third Degree Drug Sale and (ii) Fifth Degree Drug Sale were "substantially similar" to North Carolina Class G felonies for sentencing purposes. We disagree.

In North Carolina, " '[n]ew trials are not awarded because of technical errors. The error must be prejudicial.' " *Sisk v. Sisk*, ___ N.C. App. ___, ___, 729 S.E.2d 68, 71 (2012) (quoting *Dixon v. Weaver*, 41 N.C. App. 524, 528, 255 S.E.2d 322, 325 (1979)). "The burden of showing such prejudice . . . is upon the defendant." N.C. Gen. Stat.

§ 15A-1443(a) (2011). "This burden may be met by showing that there is a reasonable possibility that a different result would have been reached had the error not been committed." *State v. Jones*, 188 N.C. App. 562, 569, 655 S.E.2d 915, 920 (2008).

N.C. Gen. Stat. § 15A-1340.14(e) explains how to treat prior out-of-state convictions when determining a defendant's prior record level:

> Except as otherwise provided in this subsection, a conviction occurring in a jurisdiction other than North Carolina is classified as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony, or is classified as a Class 3 misdemeanor if the jurisdiction in which the offense occurred classifies the offense as a misdemeanor. . . . If the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points.

N.C. Gen. Stat. § 15A-1340.14(e) (2011).

A prosecutor's statements at trial are not sufficient evidence of "substantial similarity" under N.C. Gen. Stat. § 15A-1340.14(e). *See State v. Mack*, 87 N.C. App. 24, 34, 359 S.E.2d 485, 491 (1987); *see also State v. Thompson*, 309 N.C. 421, 424–25, 307 S.E.2d 156, 159 (1983) ("[We hold] that the prosecuting attorney's statement concerning a prior conviction . . . constituted insufficient evidence to support a finding of that prior conviction . . . ."). Rather, the trial court should examine "copies of the [other state's] statutes, and compar[e] . . . their provisions to the criminal laws of North Carolina" to determine whether the State proves by preponderance of evidence the offenses are "substantially similar." *Rich*, 130 N.C. App. at 117, 502 S.E.2d at 52; *see also* N.C. Gen. Stat. § 8-3 (2011) ("A printed copy of a statute, . . . of another state . . . shall be evidence of the statute law [of such state].").

In the present case, Defendant's prior New York convictions at issue are: (i) Third Degree Drug Sale (N.Y. Penal Law § 220.39 (2012)) and (ii) Fifth Degree Drug Sale (N.Y. Penal Law § 220.31 (2012)). Defendant argues the trial court committed prejudicial error by finding these convictions were "substantially similar" to North Carolina

Class G felonies under N.C. Gen. Stat. § 90-95. If both New York drug convictions had instead been treated as North Carolina Class I felonies, Defendant would have only received 13 prior record points, as opposed to 17 points. *See* N.C. Gen. Stat. § 15A-1340.14(e) (2011). For sentencing purposes, this would have made him a Level IV offender rather than a Level V offender.

Preliminarily, we note that at trial, the prosecutor contended Defendant's New York drug convictions involved heroin. However, these statements are insufficient evidence to establish the substance involved in Defendant's prior drug convictions. *See Mack*, 87 N.C. App. at 34, 359 S.E.2d at 491. Furthermore, nothing in the record indicates Defendant's prior convictions involved heroin. The NY DCI Record only describes these convictions as "Criminal Sale Controlled Substance-3rd: Narcotic Drug (220.39 [])" and "Criminal Sale Controlled Substance-5th degree (220.31[])."

Therefore, we now compare the relevant New York and North Carolina statutes. *See Rich*, 130 N.C. App. at 117, 502 S.E.2d at 52.

## 1. Third Degree Drug Sale

N.Y. Penal Law § 220.39 states "[a] person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells:"

1. a narcotic drug; or
2. a stimulant, hallucinogen, hallucinogenic substance, or lysergic acid diethylamide and has previously been convicted of an offense defined in article two hundred twenty or the attempt or conspiracy to commit any such offense; or
3. a stimulant and the stimulant weighs one gram or more; or
4. lysergic acid diethylamide and the lysergic acid diethylamide weighs one milligram or more; or
5. a hallucinogen and the hallucinogen weighs twenty-five milligrams or more; or
6. a hallucinogenic substance and the hallucinogenic substance weighs one gram or more; or
7. one or more preparations, compounds, mixtures or substances containing methamphetamine, its salts, isomers or salts of isomers and the preparations, compounds, mixtures or substances are of an aggregate weight of one-eighth ounce or more; or

8. phencyclidine and the phencyclidine weighs two hundred fifty milligrams or more; or
9. a narcotic preparation to a person less than twenty-one years old.

N.Y. Penal Law § 220.39 (2012). In New York, "[c]riminal sale of a controlled substance in the third degree is a class B felony." *Id.* New York law defines a "narcotic drug" as "any controlled substance listed in schedule I(b), I(c), II(b), or II(c) other than methadone." N.Y. Penal Law § 220.00 (2012).

The State contends this offense is "substantially similar" to N.C. Gen. Stat. § 90-95 (2011). This statute provides:

(a) Except as authorized by this Article, it is unlawful for any person:

(1) To manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance;

(2) To create, sell or deliver, or possess with intent to sell or deliver, a counterfeit controlled substance;

(3) To possess a controlled substance.

(b) Except as provided in subsections (h) and (i) of this section, any person who violates G.S. 90-95(a)(1) with respect to:

(1) A controlled substance classified in Schedule I or II shall be punished as a Class H felon, except as follows: *(i) the sale of a controlled substance classified in Schedule I or II shall be punished as a Class G felony,* and (ii) the manufacture of methamphetamine shall be punished as provided by subdivision (1a) of this subsection.

. . .

(2) A controlled substance classified in Schedule III, IV, V, or VI shall be punished as a Class I felon, except that the sale of a controlled substance classified in Schedule III, IV, V, or VI shall be punished as a Class H felon. The transfer of less than 5 grams of marijuana or less than 2.5 grams of a synthetic cannabinoid or any mixture containing such substance for no remuneration shall not constitute a delivery in violation of G.S. 90-95(a)(1).

N.C. Gen. Stat. § 90-95 (2011) (emphasis added).

We do not believe the trial court erred in determining Defendant's conviction for Third Degree Drug Sale is "substantially similar" to a North Carolina class G felony under N.C. Gen. Stat. § 90-95.

The record clearly states Defendant's New York conviction involved sale of a "narcotic drug." Under New York law, this means the substance fell under Schedules I(b), I(c), II(b), or II(c). *See* N.Y. Penal Law § 220.00 (2012); N.Y. Public Health Law § 3306 (2012). These portions of the New York Drug Schedule are almost identical to the North Carolina lists of Schedule I and Schedule II controlled substances. *See* N.C. Gen. Stat. §§ 90-89 and 90-90 (2011); N.Y. Public Health Law § 3306 (2012). In fact, of the over 120 drugs listed in New York Drug Schedules I(b), I(c), II(b), or II(c), we find only a small number of drugs that do not appear in Schedules I and II of the North Carolina statutes. In North Carolina, sale of a Schedule I or II controlled substance is a Class G felony. N.C. Gen. Stat. § 90-95 (2011). Consequently, the trial court did not err in determining Third Degree Drug Sale in New York is "substantially similar" to a North Carolina Class G felony.

Although the New York and North Carolina drug schedules are not exactly identical, "the requirement set forth in N.C. Gen. Stat. § 15A-1340.14(e) is not that the statutory wording precisely match, but rather that the offense be 'substantially similar.' " *State v. Sapp,* 190 N.C. App. 698, 713, 661 S.E.2d 304, 312 (2008). Furthermore, Defendant makes no contention his New York convictions involve one of the few narcotics not listed in North Carolina Schedules I or II. Thus, even though the relevant New York and North Carolina Drug Schedules are not exactly identical, Defendant has not met his burden of showing this dissimilarity resulted in prejudicial error. *See* N.C. Gen. Stat. § 15A-1443 (2011); *Jones,* 188 N.C. App. at 569, 655 S.E.2d at 920.

Since the relevant New York and North Carolina drug schedules substantially overlap, we conclude the trial court did not err by determining Defendant's Third Degree Drug Sale offense is "substantially similar" to a North Carolina class G felony.

## 2. Fifth Degree Drug Sale

The trial court also found Defendant's prior New York conviction for Fifth Degree Drug Sale was "substantially similar" to N.C. Gen. Stat. § 90-95 (2011). We conclude no prejudicial error occurred.

N.Y. Penal Law § 220.31 states "[a] person is guilty of criminal sale of a controlled substance in the fifth degree when he knowingly and unlawfully sells a controlled substance. Criminal sale of a controlled substance in the fifth degree is a class D felony." N.Y. Penal Law § 220.31 (2012).

The record does not indicate the type of controlled substance involved in this offense. However, even if Defendant's conviction for Fifth Degree Drug Sale were treated as a North Carolina Class I felony under N.C. Gen. Stat. § 15A-1340.14(e), given our analysis of his Third Degree Drug Sale conviction he would still receive 15 prior record level points. He thus would still be classified as a Level V offender. Therefore, we conclude the trial court did not commit prejudicial error by finding Defendant's New York drug conviction for Fifth Degree Drug Sale is "substantially similar" to a North Carolina Class G felony.

## IV. Conclusion

We conclude the trial court did not err by sentencing Defendant as a Level V offender despite inconsistencies in the NY and NC DCI Records. We further conclude the trial court did not commit prejudicial error by determining Defendant's two New York drug convictions were "substantially similar" to North Carolina Class G felonies. Thus, the trial court's decision is

AFFIRMED.

Judges HUNTER, Robert C. and CALABRIA concur.