TYSON, Judge.
Olivia Chisholm ("Defendant") appeals from the trial court's admission of officer testimony and video taken while Defendant was inside a patrol car being transported to the police station from the hospital. We conclude that Defendant has shown no error in the jury's verdict or the judgment entered thereon.
I. Background
The State's evidence tended to show Defendant was intoxicated at a nightclub called the Oak Room located in Charlotte, North Carolina, on 29 November 2015 around 2:00 a.m. The Oak Room was one of four establishments located in a former warehouse. The warehouse included an elevated, outdoor patio where visitors could eat, drink, and socialize.
In the early morning hours of 29 November, Charlotte-Mecklenburg Police Officer Ryan Shields was working off-duty as general security for the establishments in the warehouse, including the Oak Room. Accompanying Officer Shields were Officers Eric Schneider and Arthur Sommerville. Although these officers were working off-duty, all three were wearing their full police uniforms. These three officers, and others, testified for the State at trial.
Officer Shields testified that around 2:00 a.m. on 29 November, a fight broke out on the patio of the Oak Room. Several patrons were fighting and the bar staff were trying to break up the fighting. Oak Room security began bringing different people down the stairs to get people out of the club.
Officer Shields first observed Defendant when a bouncer brought her out of the Oak Room and she was standing at the top of the patio stairs. Officer Shields shined his flashlight in Defendant's face to get her attention and tell her to go home. When Officer Shields shined his flashlight on Defendant's face, he noticed her mouth and nose were bleeding. When the bouncer let her go, Defendant began yelling at the bouncer.
Officer Schneider testified he also saw an Oak Room bouncer carry Defendant out of the club towards the front patio. Officer Schneider described the bouncer as carrying Defendant in a "bear hug," as Defendant kicked and screamed. The Oak Room bouncer put Defendant down on the floor near the top of the patio.
Officer Shields testified about 200 patrons were leaving the Oak Room and coming down the stairs while the fight was occurring. As patrons were leaving, Defendant stood at the top of the stairs yelling and cursing at club bouncers and telling them they had no right to remove her from the club.
Officer Schneider testified Defendant had a strong odor of alcohol upon her person and was slurring her words. He described her demeanor as "irate," "belligerent," "screaming," "cursing," and "yelling." Officer Schneider also told Defendant to leave the premises. Defendant did not leave and continued to scream, yell and swear, and attempted to re-enter the Oak Room.
Officer Schneider took Defendant away from the club's entrance and gently pushed her back towards the patio railing. Officer Schneider told Defendant she needed to leave or she would be arrested for trespassing. Defendant told the officer she did not have to leave and swung at him. When Defendant swung at him, Officer Schneider took a step back. Defendant's hand caught the top of his vest and ripped the lapel holder of his police uniform. Officer Schneider testified that although he did not identify himself to Defendant as a police officer, he was wearing his full uniform, including his badge.
Officer Schneider told Defendant she was going to jail. She pushed him again and attempted to walk away. Officer Schneider grabbed her left wrist with his right hand and tried to place her in handcuffs. Defendant struggled, swore, and tried to get away from Officer Schneider. He described her conduct as "actively resisting."
Officer Schneider then grabbed her left triceps with his left hand and twisted her wrist backwards to throw her off balance. He applied pressure to the back of Defendant's left triceps and put her down onto the ground. Once Defendant was on the ground, Officer Schneider arrested her for assault on a government official. At this point, Defendant was kicking, screaming, swearing, and telling Officer Schneider to get off of her.
Officer Schneider told Defendant to relax and calm down. When Officer Schneider spoke to Defendant, he also noticed her mouth was bleeding. When Defendant appeared to Officer Schneider to have calmed down, he picked her up off the ground and attempted to guide her towards a patrol car. When Defendant stood upright, Defendant became belligerent again and started yelling and swearing. While Defendant was yelling, she was spitting blood. Officer Schneider told her to calm down and stop yelling as she was getting blood on him. In response, Defendant stated, "I will spit blood if I want to," looked directly into Officer Schneider's face and spat at him. Defendant's blood landed in Officer Schneider's eyes and mouth.
After Defendant spat upon Officer Schneider, Officer Shields approached Defendant and Officer Schneider. Officer Schneider and Officer Shields placed Defendant onto the ground until more officers arrived. When the other officers arrived, they took Defendant and placed her into a patrol car.
Defendant was placed into the patrol car of Officer Raymond St. John, who had been called to the club to assist because of the fight. Once placed into Officer St. John's patrol car, he and a white female officer named Officer Ford waited until a medic came and transported Defendant to Presbyterian Novant Health, a hospital in Charlotte.
Officer St. John also testified at trial, and described Defendant as being "very uncooperative" in his patrol car. Before the medic transported her to the hospital, Defendant broke the heel of her shoe trying to kick the back window out of the patrol car.
After Defendant was examined at the hospital, Defendant kicked Officer Shields while the officers were attempting to place her into the patrol car. Once Defendant was secure inside the patrol car, Officer St. John and Officer Ford transported Defendant from the hospital to the Mecklenburg County Jail. Officer St. John described Defendant as "very loud" and "calling him names." Officer St. John testified Defendant had called him a "black n****r" and said he and Officer Ford worked for "white n****rs." She told Officer St. John he was "acting like a cracker" and called Officer Ford a "bi**h ass white girl."
Officer St. John's body camera recorded Defendant while she was riding in Officer St. John's patrol car from the hospital to the county jail, including her saying the profanity and the derogatory racial epithets. Officer St. John and Officer Ford delivered Defendant to the county jail, where she was booked and detained.
Defendant was charged with, and later indicted for, assault on a government official pursuant to N.C. Gen. Stat. § 14-33(c)(4), resisting a public officer pursuant to N.C. Gen. Stat. § 14-223, and malicious conduct by a prisoner pursuant to N.C. Gen. Stat. § 14-258.4.
At trial, the trial court allowed Officer St. John to testify over Defendant's objection about the profanity and derogatory racial comments Defendant made while she was under arrest in the back of the police cruiser. The trial court also allowed the State to admit, over Defendant's objection, the body camera footage, labeled the "Prisoner Transport" video, from Officer St. John to corroborate his testimony.
The jury found Defendant to be guilty of malicious conduct by a prisoner and resisting a public officer, but not guilty of assault on a government official. The trial court sentenced Defendant to 13 to 25 months of imprisonment, and suspended the sentence with 24 months of supervised probation. Defendant gave notice of appeal in open court.
II. Jurisdiction
Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2017).
III. Issues
Defendant argues the trial court abused its discretion under Rule 403 of the North Carolina Rules of Evidence by admitting the testimony of Officer St. John concerning the profane racial epithets and insults Defendant made, and allowing the jury to view the related "Prisoner Transport" video depicting Defendant saying those epithets and insults over her objections to corroborate the officer's testimony.
IV. Standard of Review
"Whether or not to exclude evidence under Rule 403 of the Rules of Evidence is a matter within the sound discretion of the trial court and its decision will not be disturbed on appeal absent a showing of an abuse of discretion." State v. McCray , 342 N.C. 123, 131, 463 S.E.2d 176, 181 (1995). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2017).
V. Analysis
Defendant contends her repeated uses of the racial epithet "n****r," together with the other profanity depicted in the "Prisoner Transport" video and as recounted by Officer St. John's testimony, are so prejudicial that any probative value is outweighed by the prejudicial effect on her. " 'Unfair prejudice,' as used in Rule 403, means an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, as an emotional one." State v. DeLeonardo , 315 N.C. 762, 772, 340 S.E.2d 350, 357 (1986) (quoting Commentary, N.C. Gen. Stat. § 8C-1, Rule 403 (Cum. Supp. 1985) ). Our Supreme Court has held: " Rule 403 calls for a balancing of the proffered evidence's probative value against its prejudicial effect. Necessarily, evidence which is probative in the State's case will have a prejudicial effect on the defendant; the question, then, is one of degree." State v. Mercer , 317 N.C. 87, 93-94, 343 S.E.2d 885, 889 (1986).
Defendant was charged with malicious conduct by a prisoner pursuant to N.C. Gen. Stat. § 14-258.4 for spitting blood at and on Officer Schneider, resisting a public officer pursuant to N.C. Gen. Stat. § 14-223 for resisting Officer Schneider's attempts to arrest her, and assault on a government official pursuant to N.C. Gen. Stat. § 14-33(c)(4) for swinging at Officer Schneider and damaging his uniform. The essential elements of a charge of malicious conduct by a prisoner are:
(1) the defendant threw, emitted, or caused to be used as a projectile a bodily fluid or excrement at the victim;
(2) the victim was a State or local government employee;
(3) the victim was in the performance of his or her State or local government duties at the time the fluid or excrement was released;
(4) the defendant acted knowingly and willfully; and
(5) the defendant was in the custody of ... any law enforcement officer ....
State v. Robertson , 161 N.C. App. 288, 292-93, 587 S.E.2d 902, 905 (2003) ; N.C. Gen. Stat. § 14-258.4(a) (2017).
The essential elements of resisting a public officer are:
1) that the victim was a public officer;
2) that the defendant knew or had reasonable grounds to believe that the victim was a public officer;
3) that the victim was discharging or attempting to discharge a duty of his office;
4) that the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and
5) that the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse.
State v. Sinclair , 191 N.C. App. 485, 488-89, 663 S.E.2d 866, 870 (2008) (citation omitted); N.C. Gen. Stat. § 14-223 (2017).
The essential elements of a charge of assault on a government official are: "(1) an assault (2) on a government official (3) in the actual or attempted discharge of his duties." State v. Crouse , 169 N.C. App. 382, 387, 610 S.E.2d 454, 458, disc. review denied , 359 N.C. 637, 616 S.E.2d 923 (2005) ; N.C. Gen. Stat. § 14-33(c)(4) (2017).
With regard to spitting blood and saliva upon Officer Schneider, Defendant testified she "possibly could have spit on him, because I was spitting blood everywhere. It was just coming out of my mouth. And, um. I didn't intentionally spit on him. I never purposely spit on him. It was an accident if any blood got on him." She also stated she would "never spit on a police officer" because "it's just disrespectful."
At trial, the State offered the testimony of Officer St. John and the "Prisoner Transport" video as evidence tending to show Defendant's animus towards the police on the night of her arrest and her being repeatedly disrespectful to police officers to rebut her contention she did not and would not intentionally spit blood at a police officer because of it being "disrespectful." The Prisoner Transport video and Officer St. John's testimony depict Defendant as referring to Officer St. John as a "black n****r," Officer Ford as a "b***h ass white girl," and saying both officers worked for the "white n****rs." Defendant's use of these disrespectful and provocative phrases and racial epithets against the police officers is relevant and probative of whether Defendant had an animus towards police officers that would provide both a motive for her to intentionally spit blood and saliva on Officer Schneider and rebut her contention she would not act so "disrespectfully." See N.C. Gen. Stat. § 8C-1, Rule 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").
Defendant contends the prejudice elicited by the video and Officer St. John's depiction of her use of profanity and racially derogatory terms substantially outweighs the probative value of the challenged evidence. Defendant is a black female. At trial, defense counsel elicited the following testimony from Defendant on direct examination:
[Defense Counsel]. But is that how you talk normally, using the "n" word like that?
[Defendant]. Yes, sir. I do.
[Defense Counsel]. You talk like that all the time?
[Defendant]. Not all the time but, you know, amongst my friends. Peers.
[Defense Counsel]. Okay. Is that how people talk who are 25?
[Defendant]. Yes, sir.
Defendant's own testimony describing her use of the "n****r" as normal, in effect, mitigates any prejudicial effect of the jury hearing her call the police officers profane racial epithets. The jury properly heard, not only the words Defendant used, but the manner, method and volume used to deliver them. Defendant has failed to show the prejudicial effect of the relevant challenged evidence did not substantially outweigh its probative value.
VI. Conclusion
Defendant has failed to demonstrate any error in the trial court's admission of the challenged evidence. The trial court did not abuse its discretion by determining that the probative value of this challenged evidence was not substantially outweighed by the danger of unfair prejudice to Defendant.
The challenged testimony of Officer St. John and the "Prisoner Transport" video were properly admitted by the trial court. We find no error in the trial court's rulings to admit the evidence at issue, the jury's convictions, or the judgment, entered thereon. It is so ordered.
NO ERROR.
Report per Rule 30(e).
Judges INMAN and BERGER concur.